**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LATRINA COTHRON, Individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.  1:19-cv-00382 |
| WHITE CASTLE SYSTEM, INC. D/B/A WHITE CASTLE and CROSS MATCH TECHNOLOGIES, INC., | ) ) ) ) | Hon. John J. Tharp, Jr.  Magistrate Judge Sidney I. Schenkier |
| Defendants. | ) ) ) | |

**WHITE CASTLE SYSTEM, INC.'s MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................. 2

      A.    The Illinois Biometric Information Privacy Act ................................................. 2

      B.    Plaintiff's Second Amended Complaint ............................................................. 2

LEGAL STANDARD......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.      Plaintiff's Claims are Waived and She is Estopped from Making Them ........................ 4

II.     Plaintiff Fails to Plead Negligence, Recklessness, or Intent as Required Under BIPA...... 7

      A.    Plaintiff Has Not Pled Negligence As Required by BIPA..................................... 8

      B.    Plaintiff Does Not Plead Intentional or Reckless Conduct................................... 10

III.    Plaintiff Has Not Pled a Violation of BIPA Section 15(a) ............................................. 11

IV.    Plaintiff Cannot State a Claim Under BIPA Section 15(b)............................................. 12

V.     Plaintiff Fails to Plead a Claim Under BIPA Section 15(d) ........................................... 13

VI.    Plaintiff's Claims are Barred by the Illinois Workers' Compensation Act ..................... 14

CONCLUSION................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................3

*Baylay v. Etihad Airways P.J.S.C.*,
222 F. Supp. 3d 698 (N.D. Ill. 2016) ..................................................................14

*Bey v. Oakton Cmty. Coll.*,
2015 WL 5732031 (N.D. Ill. Sept. 30, 2015) ................................................3, 10

*City of Chi. v. Mich. Beach Hous. Co-op*,
242 Ill. App. 3d 636 (1st Dist. 1993)...............................................................6, 13

*Cooley v. Power Constr. Co., LLC*,
2018 IL App (1st) 171292....................................................................................14

*Coomes v. Allstate Ins. Co.*,
2011 WL 4005325 (S.D. Ohio Aug. 9, 2011).......................................................4

*Dana Tank Container, Inc. v. Human Rights Comm'n*,
687 N.E.2d 102 (Ill. App. 1997) .........................................................................12

*Demos v. Ferris-Shell Oil Co.*,
317 Ill. App. 3d 41 (1st Dist. 2000) ......................................................................8

*Denius v. Dunlap*,
330 F.3d 919 (7th Cir. 2003) ................................................................................9

*Geddes v. Mill Creek Country Club, Inc.*,
196 Ill. 2d 302 (2001) ...........................................................................................7

*Henson v. CSC Credit Servs.*,
29 F.3d 280 (7th Cir. 1994) ..................................................................................9

*Home Ins. Co. v. Cincinnati Ins. Co.*,
213 Ill. 2d 307 (2004) ...........................................................................................6

*In re Estate of Ferguson*,
313 Ill. App. 3d 931 (2d Dist. 2000).....................................................................6

*Indianapolis Life Ins. Co. v. Lucky Stores, Inc.*,
1993 WL 291687 (N.D. Ill. Aug. 2, 1993) ...........................................................5

**Page(s)**

*Lannom v. Kosco,*
    158 Ill.2d 535 (1994) ...................................................................................14

*Miller v. Motorola, Inc.,*
    202 Ill. App.3d 976 (1st Dist. 1990) ...........................................................6

*Papadakis v. Fitness 19 IL 116, LLC,*
    2018 IL App (1st) 170388...........................................................................9, 10

*People v. Trainor,*
    752 N.E.2d 1055 (Ill. 2001) ........................................................................7

*Rivera v. Google Inc.,*
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) .......................................................7, 10

*Siegel v. Samsung Elecs. Am., Inc.,*
    1987 WL 8193 (N.D. Ill. Mar. 13, 1987).....................................................5

*Texaco, Inc. v. Short,*
    454 U.S. 516 (1982)......................................................................................8

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.,*
    987 F.2d 429 (7th Cir. 1993) .......................................................................4

*Zurbriggen v. Twin Hill Acquisition Co., Inc.,*
    338 F. Supp. 3d 875 (N.D. Ill. 2018) .........................................................3, 10

**STATUTES**

740 ILCS 14/5 & 10................................................................................................9

740 ILCS 14/5(a) ...................................................................................................2

740 ILCS 14/15(a) .................................................................................................11, 12

740 ILCS 14/15(b) .................................................................................................12

740 ILCS 14/15(d) .................................................................................................13, 14

740 ILCS 14/15(e) .................................................................................................8, 13, 14

740 ILCS 14/20 ......................................................................................................7

820 ILCS 305/5(a) .................................................................................................14

820 ILCS 305/1.......................................................................................................14

4838-9317-8005

<u>**Page(s)**</u>

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................3

**OTHER AUTHORITIES**

*Black's Law Dictionary* (10th ed. 2014) ........................................................................13

*Merriam-Webster* (2018) ........................................................................13

4838-9317-8005

## INTRODUCTION

White Castle System, Inc. ("White Castle") operates 63 fast casual restaurants in Illinois, and is a member of an industry – the restaurant industry – that constitutes Illinois' largest private-sector employer.[1]  Plaintiff Latrina Cothron is a long-time White Castle employee who consented to use and has repeatedly used certain technology at work for over ten years, and now seeks to sue White Castle based on her use of the technology.  Plaintiff attempts to bring claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, despite her lawsuit's concessions that she "registered" and has continued to scan her "fingerprint" to access work-related information for years, and that she consented in writing to use her "fingerprint" to do so.[2] (ECF No. 44, ¶¶ 53–54, 61.)  Plaintiff incorrectly contends that White Castle violated BIPA by: (1) not having a public retention policy, (2) collecting her data without making certain disclosures required under BIPA, and (3) disclosing her biometric information to others without her consent. None of these allegations is correct, and none is well-pled.

White Castle has a public retention policy specifically tailored to comply with BIPA. Plaintiff has repeatedly been advised of and consented to the use of the finger scan technology at issue, in writing.  (Exs. A, B.)  She thus has waived any claims under BIPA, and is estopped from making them here.  Additionally, Plaintiff failed to plead allegations sufficient to establish that White Castle acted negligently or intentionally, elements that are prerequisites to any BIPA claim

---

[1] The restaurant industry is Illinois' largest private employer and currently employs over 588,000 Illinois residents. *See* https://www.illinoisrestaurants.org/page/AboutUs (last accessed May 8, 2019).

[2] White Castle disputes Plaintiff's claims that she has scanned her "fingerprint" or that White Castle used or has ever possessed Plaintiff's fingerprints.  White Castle thus uses the term "finger scan" as it is an accurate description of the data and process. White Castle also disputes that it has used or possesses any of Plaintiff's biometric identifiers or biometric information as defined by BIPA, 740 ILCS 14/10.  For the purposes of this motion, Plaintiff's allegations must be taken as pled. The use of the term "biometric" in this memorandum is not a concession that any data falls within BIPA.  White Castle reserves any/all arguments regarding the nature of finger scans at issue in this lawsuit.

or recovery.  Each of Plaintiff's newly pled Causes of Action fails to state viable claims under

BIPA.  Moreover, Plaintiff's claims also are barred by the exclusivity provisions of the Illinois

Workers' Compensation Act, as she pleads nothing more than a purported workplace injury.

## BACKGROUND

### A.    The Illinois Biometric Information Privacy Act

BIPA was enacted in 2008 to manage the "promise" of biometric technology for Illinois

residents.[3]  BIPA sought to encourage the development and use of biometric technology by

imposing certain requirements on private entities that collect and possess biometric data.  *See* 740

ILCS 14/10.  BIPA regulates the "[r]etention; collection; disclosure; [and] destruction" of

biometric identifiers and information.  It also creates a private right of action for those "aggrieved"

by violations of BIPA, upon a showing of a negligent, reckless, or intentional BIPA violation.  *Id.*

14/20.  BIPA provides for the recovery of liquidated damages of either $1,000 if the violation is

negligent, or $5,000 for an intentional or reckless violation.  *Id.*

### B.    Plaintiff's Second Amended Complaint

Plaintiff alleges that she was hired by White Castle in 2004 and currently works there as a

manager.  (ECF No. 44 ¶ 39.)  "Approximately three years" into her employment with White

Castle, Plaintiff "***was required*** to scan and register her fingerprints so White Castle could use them

as an authentication method for Plaintiff to access the computer as a manager and to access her

paystubs as an hourly employee as a condition of employment with White Castle."  (*Id.* ¶ 40.)

When she first filed her lawsuit, Plaintiff claimed that she never received or signed a consent to

use her finger scan at work.  (ECF No. 1-1, p. 28 of 112.)  Faced with uncontroverted evidence

that these claims were untrue (Exs. A, B), Plaintiff has now modified her claims for a third time,

---

[3] *See* 740 ILCS 14/5(a) ("The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.").

4838-9317-8005

asserting that although White Castle disclosed how she would use her finger scans during her employment, had a company policy regarding retention and destruction of the information, and obtained her consent to use the finger scans, White Castle did not make such disclosures or have a policy **prior** to using her finger scan or obtaining her written consent to do so. (ECF No. 44 ¶¶ 47–49 (emphasis in original).) Essentially, Plaintiff now admits White Castle complied with BIPA – she simply disputes the timing of its compliance. (*Id*.)

According to Plaintiff, she has suffered several injuries, including an informational injury due to not receiving information about the use and length of use of her finger scans **prior** to their use. (*Id*. ¶ 54.) She further contends that she was insufficiently compensated by White Castle for the use of her finger scans. (*Id*. ¶ 53.) Finally, Plaintiff asserts that White Castle disseminated her finger scan to the technology's providers and "others" that hosted the data in data centers. (*Id*. ¶ 55.) Put simply, Plaintiff's claims are not well-pled, and they fail to state viable BIPA claims in the face of undeniable evidence that White Castle has complied with BIPA. Plaintiff's claims should be dismissed with prejudice.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff's complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *accord Bey v. Oakton Cmty. Coll.*, 2015 WL 5732031, at *3 (N.D. Ill. Sept. 30, 2015) (Tharp, J.). A Rule 12(b)(6) dismissal is also appropriate when employees attempt to bring claims barred by the Illinois Workers' Compensation Act. *Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 338 F. Supp. 3d 875, 896 (N.D. Ill. 2018).

3

In ruling on this Motion to Dismiss, the Court is permitted to consider documents that are "referred to in the plaintiff's complaint and are central to her claim," as well as documents referenced in the complaint that Plaintiff failed to attach. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Here, Plaintiff's lawsuit is premised entirely upon information, including a written release, which she now admits she signed. White Castle is thus permitted to attach Plaintiff's signed, written releases (Exs. A, B) to this Motion. *See Coomes v. Allstate Ins. Co.*, 2011 WL 4005325, at *7 (S.D. Ohio Aug. 9, 2011).

## ARGUMENT

### I.     Plaintiff's Claims are Waived and She is Estopped from Making Them

Despite her protestations to the contrary, Plaintiff previously and affirmatively consented to provide her finger scan for the stated purpose of electronic signatures on at least two separate occasions. In 2004, Plaintiff registered in White Castle's Biometric System using an online form that advised her to "Click Here to Register in Biometrics for Electronic Signatures." (Ex. A.) Plaintiff was also advised that if she chose not to register, she could print and sign forms by hand, by clicking "I Do Not Wish to Register in Biometrics." (*Id.*) Plaintiff has used the finger scan she registered for the past 15 years to electronically sign work forms and access work-related information. (ECF No. 44 ¶ 54.)

In October 2018, well before filing this action, but certainly recently enough to recall doing so, Plaintiff signed the White Castle Biometric Information Privacy Team Member Consent Form. (Ex. B.) Via the Consent Form, Plaintiff reaffirmed her election to use finger scans "for the purpose of identifying [Plaintiff's] signature when using White Castle's proprietary software" and to access secure information systems. (*Id.*) Plaintiff also expressly and voluntarily consented to White Castle's "collection, storage and use of biometric data," even if the data were covered by BIPA. (*Id.*) Plaintiff was advised in the Consent Form that her biometric data would be deleted

4

when her employment ended.  (*Id*.)  Again, Plaintiff was given the opportunity not to consent to provide her finger scan.  (*Id*.)  Plaintiff not only consented, she even used her registered finger scan to sign the Consent Form.  (*Id*.)

Three months later, Plaintiff filed this lawsuit, initially claiming she "never" received a consent form/release, "never" signed a release, and was "never" advised what her biometric data was used for and when it would be destroyed.  (ECF No. 1-1, p. 14 of 112.)  When White Castle filed its first Motion to Dismiss (ECF No. 38), it attached the two consent forms Plaintiff signed, which it had previously supplied to Plaintiff's counsel.[4]  These forms establish that as recently as a few short months ago, Plaintiff reaffirmed that she "voluntarily" consented to White Castle's "collection, storage, and use of biometric data" to authenticate her signature and to access secure systems, even if her biometric data was covered by BIPA.  (Ex. B.)  In fact, Plaintiff herself states that she knew the purpose of the finger scans: accessing White Castle computers and her paystubs. (ECF No. 44 ¶¶ 43, 44.)

Plaintiff unequivocally waived her purported right to privacy in any purported biometric data, and in fact, expressly authorized White Castle to collect, store, and use biometric information even if it constituted biometric data covered by BIPA.  (Ex. B.)  "Waiver is the voluntary relinquishment of a known right."  *Indianapolis Life Ins. Co. v. Lucky Stores, Inc.*, 1993 WL 291687, at *10 (N.D. Ill. Aug. 2, 1993), *aff'd*, 35 F.3d 568 (7th Cir. 1994); *accord Siegel v. Samsung Elecs. Am., Inc.*, 1987 WL 8193, at *2 (N.D. Ill. Mar. 13, 1987).  In both 2004 and again in 2018, Plaintiff was advised of the purpose and use of finger scans, and given the option not to use them.  (*See* Exs. A, B.)  She voluntarily elected on each occasion to allow the use of her

---

[4] White Castle's counsel provided Plaintiff's consent forms to Plaintiff's attorneys prior to filing its initial Motion to Dismiss, in an attempt to avoid needless motion practice, to no avail.

purported biometric data for the stated purposes, and then, according to her lawsuit, used her finger scan "continuously and repeatedly" consistent with these consents.

Plaintiff waived her rights to bring a claim under BIPA again in 2018, when she signed the White Castle Biometric Information Privacy Team Member Consent Form consenting to White Castle's collection, storage, and use of her biometric data even though she was expressly advised White Castle's software could "utilize [Plaintiff's] biometric identifiers or biometric information as defined in the Illinois Biometric Information Privacy Act (BIPA)." *See In re Estate of Ferguson*, 313 Ill. App. 3d 931, 937 (2d Dist. 2000) (citation omitted) ("Individuals generally may waive substantive rules of law, statutory rights, and even constitutional rights enacted for their benefit, so long as the waiver is knowing, voluntary, and intentional."); *see also Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 326 (2004) ("Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right."). After waiving this right in both 2004 and 2018, Plaintiff cannot now revoke her waiver and seek damages for purported violations of "rights" she contends are conferred by BIPA. *See, e.g.*, *City of Chi. v. Mich. Beach Hous. Co-op*, 242 Ill. App. 3d 636, 650 (1st Dist. 1993). Furthermore, Illinois law is clear that an employee waives any privacy rights in any information voluntarily provided to an employer, no matter how sensitive. *See Miller v. Motorola, Inc.*, 202 Ill. App.3d 976, 981 (1st Dist. 1990).

Plaintiff's assertion that she "*was required*" to scan her finger scan (ECF No. 44 ¶ 46) provides her no protection from her clear waiver. Both consent forms permitted Plaintiff to decline to consent to the use of her finger scan (Ex. A: "I do not wish to register in biometrics"; and "If you choose not to register in biometrics, you will have to print and sign the forms by hand."). Plaintiff's 2018 consent form states: "The team member understands that he or she is free to

decline to provide biometric identifiers and biometric information to White Castle . . . . Electing not to provide such consent will not result in any adverse effects on his or her employment with White Castle." (Ex. B). Exhibit B also allowed Plaintiff to withdraw her consent at any time. (*Id.*) BIPA expressly allows employers to require employees to sign such consents, by defining a written release as "a release executed . . . as a condition of employment." 740 ILCS 14/10.

Plaintiff is now equitably estopped from alleging that she did not consent to collection of her finger scans. *See Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313–14 (2001) (equitable estoppel requires a knowing misrepresentation relied on by another resulting in prejudice). Plaintiff has either misrepresented or outright concealed the fact that she voluntarily consented to biometric registration to sign documents for the last 15 years. (Ex. A.) White Castle relied upon her initial registration and repeated consent to allow her to use finger scans for work purposes. She should not be allowed to now revoke her consent for a chance at a windfall of either $1,000 or $5,000 for "*each*" time she used her already registered and approved finger scans at work. (ECF NO. 44, Prayer for Relief, at 23–24 (emphasis in original).)

## II. Plaintiff Fails to Plead Negligence, Recklessness, or Intent as Required Under BIPA

To recover under BIPA, Plaintiff must adequately allege an intentional, reckless, or negligent violation of the statute. 740 ILCS 14/20. By BIPA's terms, not every BIPA violation gives rise to a cognizable claim; only intentional, reckless, or negligent ones do. *Id.*; *see also Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017) (BIPA only subjects violators to statutory damages if there is negligence or willfulness; conversely, an entity could "avoid

liability by taking reasonable steps toward compliance").[5]  Here, Plaintiff fails to plead the elements of negligence, recklessness, or intent necessary to maintain her BIPA claims.

### A.    Plaintiff Has Not Pled Negligence as Required by BIPA

Plaintiff's lawsuit – now in its third iteration – is devoid of any assertions to support a claim that White Castle acted negligently under BIPA.  Instead, she asks the Court to summarily determine and declare that White Castle's actions constitute negligence, and seeks an award of BIPA liquidated damages, which she terms "statutory damages of $1,000 for *each* negligent violation of BIPA," without providing any allegations to support such a declaration or award. (ECF No. 44 at 18–21.)

BIPA contains a negligence standard of "reasonable standard of care within the private entity's industry."  740 ILCS 14/15(e); *see Demos v. Ferris-Shell Oil Co.*, 317 Ill. App. 3d 41, 54 (1st Dist. 2000) ("[S]tandards promulgated by industry, trade, or regulatory groups . . . may properly be admitted to aid the trier of fact in determining the standards of care in negligence actions.").  Plaintiff's suit contains no allegations that White Castle's conduct deviated from the reasonable standard of care taken by other employers, in any industry, with respect to BIPA.

When a "reasonable care" standard is applied, it is readily apparent that White Castle has not been negligent, nor can Plaintiff plead as such.  White Castle is not alone in being caught up in this BIPA litigation surge, despite having used reasonable care to provide employees with notice and obtain consent since 2004, well before BIPA's 2008 enactment. Ex. B; 740 ILCS 14/1 *et seq*. Plaintiffs have filed more than 200 BIPA class actions, many of which assert BIPA violations in

---

[5] A statute's words "cannot be read in a fashion that would render other words or phrases meaningless, redundant, or superfluous."  *People v. Trainor*, 752 N.E.2d 1055, 1063 (Ill. 2001).

the employment context.[6]  The fault lies with BIPA, which does not afford employers "a reasonable opportunity to familiarize [themselves] with [BIPA's] terms and to comply."  *See Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982).

Here, an employer such as White Castle, taking reasonable care to ascertain the requirements of Illinois law vis-à-vis employers and employees, would have no reason to be aware of BIPA's existence or the obligations it purports to impose.  Laws specifically applicable to employers and their employees are contained in Chapter 820 of the Illinois Code, which is titled "Employment."  *See* Illinois Code Sections, attached hereto as Ex. C.  BIPA appears in an entirely different chapter of the Illinois Code (Ch. 140), which is titled "Civil Liabilities."  *Id*.  BIPA's "Legislative Findings" section makes no mention of employers or employees, and the term "employment" is mentioned only once.  740 ILCS 14/5 & 10.

A reasonable employer would also look to the Illinois Department of Labor's (IDOL) Required Postings List, which details each Illinois employment statute employers are required to post in employee areas.  *See* https://www2.illinois.gov/idol/Employers/pages/posters.aspx.  BIPA is not a required posting and is not referenced on the IDOL website.[7]

Moreover, despite seeking "statutory damages of $5,000 for each intentional and/or reckless violation . . . or, in the alternative, statutory damages of $1,000 for *each* negligent violation" (*id*. ¶¶ 79, 89, 98), Plaintiff does not even hint at *which alleged violation was which*,

---

[6] *See* https://www.secureidnews.com/new-item/recent-rulings-pull-illinois-biometric-law-in-opposite-directions.

[7] A court may take judicial notice of matters of public record or government websites at any stage of a proceeding without converting a 12(b)(6) motion into a motion for summary judgment.  *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *see also Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (noting that contents of government websites are a proper item of which to take judicial notice).

9

apparently content to let the Court sort that out.  This falls well short of her pleading burden, and her negligence claims must be dismissed.

### B.     Plaintiff Does Not Plead Intentional or Reckless Conduct

To plead recklessness or intent, Plaintiff must plead the elements of negligence (duty, breach of duty, proximate cause), and "then also plead a heightened state of mind." *Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388, at ¶ 22.[8]  Plaintiff has failed to plead that White Castle committed an intentional or reckless violation of BIPA. She does not allege that White Castle acted in a knowing manner in violation of a statute or that it knew, or reasonably should have known, that its actions violated BIPA.  Rather, Plaintiff again summarily seeks a declaration that White Castle "intentional[ly] or reckless[ly]" violated BIPA, and an award of "$5,000 for *each* reckless and/or intentional violation of BIPA."  (ECF No. 44, Prayer for Relief, at 21; *id.* ¶ 52 ("White Castle intentionally interfered with Plaintiff's right to possess and control her own sensitive biometric data.").)  These summary statements, by themselves, are insufficient to plead intentional or reckless conduct on the part of White Castle.  *Bey*, 2015 WL 5732031, at *3.

As courts in this district have noted, for purposes of intentional tort liability, Plaintiff must plead that White Castle knew with substantial certainty that harm would result to her as a result of the alleged BIPA violations.  *Zurbriggen*, 338 F. Supp. at 888.  Plaintiff fails to meet this standard, as she has not made any assertions at all that White Castle was substantially certain that harm would result to her as a result of White Castle's purported BIPA violations. Indeed, the only allegation Plaintiff makes about White Castle's state of mind is that White Castle "failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data."

---

[8] Although the court *Papadakis* addresses a "willful and wanton" standard, a federal court has treated those standards as essentially the same as the "intentional or reckless" standard when interpreting BIPA. *Rivera*, 238 F. Supp. 3d at 1104.

(ECF No. 44 ¶ 28.) According to Plaintiff's own allegations, White Castle could not have acted intentionally toward her with respect to BIPA, which she describes as unnoticed, and thus unknown. Accordingly, this Court should dismiss and/or strike Plaintiff's claim for $5,000 in liquidated damages per purported BIPA violation – she pleads nothing to support such a request.

## III. Plaintiff Has Not Pled a Violation of BIPA Section 15(a)

Plaintiff's most recent complaint contains three separate counts regarding BIPA. The "First Cause of Action" alleges a violation of 740 ILCS 14/15(a), which provides that an entity "in possession" of biometric identifiers or information:

> develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

Plaintiff contends that White Castle violated Section 15(a) because it did not have a publicly available policy establishing retention schedules and destruction guidelines and thus did not comply with a retention schedule or destruction guidelines. (ECF No. 44 ¶¶ 72-73.) These allegations are not accurate, as detailed in White Castle's initial dismissal filings. (ECF No. 38.)

Even a cursory internet search reveals White Castle's Biometric Information Privacy Policy, which has a separate "Biometric Information Retention Schedule" that states: "White Castle shall retain employee biometric data only during the course of the employee's tenure with White Castle." (Ex. D at 8–10.) The retention schedule also provides that White Castle will "delete/destroy" any biometric information "when an employee's employment with White Castle ends." (*Id.*) Accordingly, Plaintiff's allegations that White Castle "fails to provide employees" with this information (ECF No. 44 ¶ 32), and that it "lacks retention schedules and guidelines for permanently destroying the data" (*id*. ¶ 34), are not accurate. BIPA requires a publicly posted policy, and White Castle has such a policy.

11

4838-9317-8005

Plaintiff further asserts that "[a]pproximately three years into [her] employment with White Castle," before consenting to the use of her finger scan, White Castle did not "provide a publicly available retention schedule and guidelines for destroying [her] fingerprint data." (*Id.* ¶ 41; *see also id.* ¶ 48 ("**Prior to** the collection . . . Plaintiff had never been informed of any biometric retention policy . . . .").) First, this allegation admits what Plaintiff already knows – that White Castle has a "biometric retention policy." The allegation also fails to state a claim under Section 15(a), which only requires entities to develop a policy *after* they possess biometric data. *See* 740 ILCS 14/15(a) ("A private entity in possession of biometric [data] must develop a written policy . . . ."). Where BIPA requires certain conduct *before* collection or possession, it does so explicitly. Section 15(b), for example, expressly bars an entity from collecting biometric data "unless it first" complies with BIPA's notice and consent provisions. *Id.* at 14/15(b). Had the legislature intended for entities to develop a section 15(a) policy *before* coming into possession of biometric data, BIPA would contain express language to this effect. *Dana Tank Container, Inc. v. Human Rights Comm'n*, 687 N.E.2d 102, 104 (Ill. App. 1997) ("Where the legislature uses certain words in one instance and different words in another, it intended different results."). Because White Castle has clearly developed (and posted) a retention policy, it has complied with Section 15(a).

## IV. Plaintiff Cannot State a Claim Under BIPA Section 15(b)

Plaintiff's Second Cause of Action attempts to assert a claim under 740 ILCS 14/15(b). Section 15(b) requires entities to make the following advance disclosures: (1) that biometric information is being collected or stored, and (2) the specific purpose and length of time for which the biometric information is being collected. 740 ILCS 14/15(b)(1) & (2). As stated above, *supra* § I, Plaintiff has possessed this information since she initially registered to use "biometrics" for document signature purposes related to her employment. (Ex. A.) The collection, purpose and length of time (during employment) of use of the "biometrics" are all indicated, as is Plaintiff's

12

ability to elect not to use "biometrics." (*Id*.) As such, White Castle has complied with BIPA. Plaintiff's "registration," which she admits occurred, constituted her advance written consent in compliance with BIPA. (*Id*.) Plaintiff has waived and is estopped from bringing this claim many years later, and cannot "un-waive" her prior consents to bring this claim now. *See, e.g.*, *Mich. Beach Hous. Co-op*, 242 Ill. App. 3d at 650.

## V. Plaintiff Fails to Plead a Claim Under BIPA Section 15(d)

Plaintiff's Third Cause of Action asserts that that White Castle violated 740 ILCS 14/15(d) because it allegedly "systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric identifiers and/or biometric information without <u>first</u> obtaining . . . consent." (ECF No. 44 ¶ 96.) This is yet another fatally flawed assertion that ignores BIPA's language. Section 15(d) also contains no language requiring that consent to disclosure precede possession, as BIPA merely provides that entities may not, "disclose . . . a person's or a customer's biometric identifier or biometric information unless" the person consents to the disclosure. As with Section 15(a), BIPA does not require advance consent; where BIPA does require advance consent, it so states. *See supra* § IV.

Moreover, Plaintiff has not alleged a "disclosure" of biometric data under Section 15(d), where she alleges that White Castle "disseminates" the data to unidentified "others" for storage. (ECF 44 ¶ 55.) Storage and transmission of biometric information is governed by BIPA Section 15(e), which requires only that entities "store, transmit, and protect from disclosure all . . . biometric information using the reasonable standard of care." 740 ILCS 14/15(e). Section 15(d) refers only to protections from disclosure, and not to disclosure itself. "[W]here different words are used in the same statutory provision, such words are deemed to have different meanings unless a contrary contention is manifest." *Russell*, 492 N.E.2d at 965. To "disclose" is "to make [something] known or public," "to show [something] after a period of inaccessibility or of being

13

unknown," *Black's Law Dictionary* (10th ed. 2014), or "to expose to view." *Merriam-Webster* (2018). Per BIPA's own terms, not every transmission is a disclosure. Section 15(e) requires entities to "store, transmit, and protect from disclosure all . . . biometric information" with reasonable care. 740 ILCS 14/15(e). BIPA actually authorizes transmission of biometric data so long as care is taken. If every transmission were also a disclosure, moreover, entities could never "transmit" biometric data while also "*protect[ing it]* from disclosure," a combination Section 15(e) expressly authorizes and regulates.

Accordingly, Plaintiff does not state any violation of BIPA Section 15(d), the provision alleged to have been violated in her Third Cause of Action. She also does not state a claim under BIPA Section 15(e), as she has alleged only that White Castle committed actions (transmission for storage) authorized by BIPA. *See* 740 ILCS 14/15(d), (e).

## VI. Plaintiff's Claims are Barred by the Illinois Workers' Compensation Act

Plaintiff's claims should also be dismissed because they are barred by the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1, *et seq.* According to Plaintiff, she has suffered injuries due to her use of White Castle's biometric technology for work related purposes, including accessing White Castle computer systems and her pay records. Thus, Plaintiff is claiming an accidental workplace injury, and the IWCA is the exclusive remedy for such injuries. 820 ILCS 305/5(a); *Cooley v. Power Constr. Co., LLC*, 2018 IL App (1st) 171292, at ¶ 12 ("Employees that are injured at work do not have a cause of action against their employer, and their exclusive remedy is to apply for benefits under the Workers' Compensation Act"). Even if Plaintiff had pleaded that White Castle acted intentionally or recklessly, the IWCA would still be the exclusive remedy for her alleged injuries. *Baylay v. Etihad Airways P.J.S.C.*, 222 F. Supp. 3d 698, 704 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) ("Both an employee's claim of employer negligence and a claim of employer willful and wanton conduct fall within the definition of 'accidental' and are

14

preempted" by the Illinois Workers' Compensation Act); *see also Lannom v. Kosco*, 158 Ill.2d

535 (1994) (same).

<u>**CONCLUSION**</u>

For the foregoing reasons, White Castle respectfully requests that the Second Amended

Class Action Complaint be dismissed with prejudice.


Dated:  May 9, 2019                               Respectfully submitted,

                                                  WHITE CASTLE SYSTEM, INC. d/b/a
                                                  WHITE CASTLE

                                       By:     */s/ Melissa A. Siebert*
                                                  One of Its Attorneys

Melissa A. Siebert
Erin Bolan Hines
Benjamin E. Sedrish
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive
Chicago, IL  60606
Tel:  (312) 704-7700
Fax:  (312) 558-1195
masiebert@shb.com
ehines@shb.com
bsedrish@shb.com

15

4838-9317-8005

## <u>CERTIFICATE OF SERVICE</u>

I, Melissa A. Siebert, an attorney, hereby certify that on **May 9, 2019,** I caused a true and correct copy of **WHITE CASTLE SYSTEM, INC.'s MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT** to be served on counsel of record via ECF pursuant to the General Order on Electronic Filing of the United States District Court, Northern District of Illinois.


*/s/ Melissa A. Siebert*

4838-9317-8005