**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LATRINA COTHRON, individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-00382 |
| WHITE CASTLE SYSTEM, INC. D/B/A WHITE CASTLE and CROSS MATCH TECHNOLOGIES, INC., | ) ) ) ) | Hon. John J. Tharp, Jr.  Magistrate Judge Sidney I. Schenkier |
| Defendants. | ) | |

**WHITE CASTLE SYSTEM, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

    A.    Plaintiff Implicitly and Expressly Consented to Collection, Waived Her Claims Under BIPA in 2004 and 2018, and Is Estopped From Raising Them Now. .............................................................................................................2

    B.    Plaintiff Has Not Pled Facts To Support The Assertion That White Castle Negligently Or Intentionally Violated BIPA. ..........................................................8

    C.    Plaintiff Fails To Allege That White Castle Failed To Comply with 740 ILCS 14/15(a). ...........................................................................................12

    D.    Plaintiff Fails to Allege That White Castle Failed to Comply with 740 ILCS 14/15(b) ..............................................................................................12

    E.    Plaintiff Fails to Allege That White Castle Failed to Comply with 740 ILCS 14/15(d) ..............................................................................................13

    F.    Illinois Workers' Compensation Act Bars Plaintiff Claims. ................................14

CONCLUSION ....................................................................................................................18

# TABLE OF AUTHORITIES

**Federal Court Cases**

*Abcarian v. McDonald*,
   617 F.3d 931 (7th Cir. 2010) ................................................ 9

*Aguilar v. Rexnord LLC*,
   No. 17 CV 9019, 2018 U.S. Dist. LEXIS 110765 (N.D. Ill. July 3, 2018) ......................... 4, 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................ 9

*Barber v. Overton*,
   2005 U.S. Dist. LEXIS 49506 (W.D. Mich. July 7, 2009) .................................... 17

*Baylay v. Etihad Airways P.J.S.C.*,
   222 F. Supp. 3d 698 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) ..................... 16

*Goings v. UGN, Inc.*,
   No. 17-cv-9340, 2018 U.S. Dist. LEXIS 99273 (N.D. Ill. June 13, 2018) ........................ 4

*Gomez v. Illinois State Bd. of Educ.*,
   811 F.2d 1030 (7th Cir. 1987) ............................................... 9

*Green Skyline Solar, LLC v. Sunpin Solar Development, LLC*,
   No. 16-cv-7659, 2017 U.S. Dist. LEXIS 22615 (N.D. Ill. Feb. 16, 2017) ....................... 17

*Hart v. Frisch's Restaurants, Inc.*,
   1990 U.S. Dist. LEXIS 16832 (S.D. Ind. Sept. 28, 1990) ................................... 18

*Howe v. Speedway LLC*,
   No. 17-cv-07303, 2018 U.S. Dist. LEXIS 90342 (N.D. Ill. May 31, 2018) ....................... 4, 5

*Loja v. Main St. Acquisitions Corp.*,
   906 F.3d 680 (7th Cir. 2018) ................................................ 11


**State Court Cases**

*Alves v. Cintas Corp.*,
   2013 R.I. Super. LEXIS 125, at 20-25 ..............................................18

*Bogenberger v. Pi Kappa Alpha Corp. Inc.*,
   2018 IL 120591 ........................................................... 9

*Caterpillar Tractor Co. v. Industrial Com*,
   129 Ill. 2d 52 (1989) ...................................................... 16

*Cooley v. Power Constr. Co., LLC*,
   2018 IL App (1st) 171292 at ¶ 12 ............................................. 14

*Copass v. Illinois Power Co.*,
   211 Ill.App.3d 205 (4th Dist. 1991) ........................................... 16

*Dana Tank Container, Inc. v. Human Rights Comm'n*,
   687 N.E.2d 102 (Ill. App. 1997) ............................................. 12

*Fregeau v. Gillespie*,
   96 Ill. 2d 479 (1983) ...................................................... 15

*Fitch v. McDermott*,
   401 Ill. App. 3d 1006 (2d Dist. 2010) ......................................... 9

*Folta v. Ferro Eng'g*,
   2015 IL 118070 ........................................................... 16

*Garland v. Morgan Stanley & Co.*,
    2013 IL App (1st) 112121 ................................................................. 16
*Geddes v. Mill Creek Country Club, Inc.*,
    196 Ill. 2d 302 (2001) ..................................................................... 6
*Gurba v. Community High School District No. 155*,
    2015 IL 118332, ¶ 10 ...................................................................... 8
*Hancock v. Luetgert*,
    40 Ill. App. 3d 808 (1976) ............................................................... 9
*Hubble v. O'Connor*,
    291 Ill.App.3d 974 (Ill. App., 1997) ................................................ 6
*Kraft, Inc. v. Edgar*,
    138 Ill. 2d 178, 561 N.E.2d 656 (1990) ..................................... 8, 10
*Mayfield v. ACME Barrel Co.*,
    258 Ill.App.3d 32 (1st Dist. 1994) .................................................. 16
*McLean v. Rockford Country Club*,
    352 Ill. App. 3d 229 (2d Dist. 2004) ............................................... 9
*Meerbrey v. Marshall Field & Co., Inc.*,
    139 Ill.2d 455 (1990) ................................................................. 14, 15
*In re Nitz*,
    317 Ill.App.3d 119 (2000) ............................................................... 5
*Richardson v. County of Cook*,
    250 Ill. App. 3d 544 (1st Dist. 1993) ............................................. 17
*Robertson v. Hostmark Hospitality Group,Inc., et al.*,
    Circuit Court of Cook County N. 18-CH-5194, page 3 ................... 17
*Rosenbach v. Six Flags Entertainment Corp.*,
    2019 IL 123186 ...................................................................... 9, 10, 14
*Sekura v. Krishna Schaumburg Tan*,
    2018 IL App (1st) 180175, ¶ 4, 115 N.E.3d 1080 ...................... 10,11
*Standard Mutual Insurance Co. v. Lay*,
    2013 IL 114617, 989 N.E.2d 591 ................................................... 10
*Sylvester v. Indus. Comm'n*,
    197 Ill. 2d 225 (2001) ..................................................................... 8

**Statutory Authorities**
740 ILCS 14/15(a) ................................................................................ 13
740 ILCS 14/15(b) ................................................................................ 13
740 ILCS 14/15(d) ........................................................................... 13, 14
740 ILCS 14/15(e) ................................................................................ 14
740 ILCS 14/20 .................................................................................... 11
740 ILCS 14/20(1) ................................................................................. 8
820 ILCS 305/5(a) ............................................................................... 15
820 ILCS 305/11 .................................................................................. 15

**Federal Rules and Regulations**
Fed. R. Civ. P. 12(b)(6) ...................................................................... 1, 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LATRINA COTHRON, individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-00382 |
| WHITE CASTLE SYSTEM, INC. D/B/A WHITE CASTLE and CROSS MATCH TECHNOLOGIES, INC., | ) ) ) ) | Hon. John J. Tharp, Jr.

Magistrate Judge Sidney I. Schenkier |
| Defendants. | ) ) | |

**WHITE CASTLE SYSTEM, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

Defendant White Castle System, Inc. d/b/a White Castle, ("Defendant" or "White Castle"), by its attorneys, LEWIS BRISBOIS BISGAARD & SMITH LLP, for its Reply in Support of its Motion to Dismiss Plaintiff's Second Amended Class Action Complaint ("Motion to Dismiss"), states as follows:

**INTRODUCTION**

Plaintiff's Second Amended Class Action Complaint ("Class Action Complaint") (Dkt. #44) is based on alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"). As described in Defendant's Motion to Dismiss, Plaintiff's Class Action Complaint fails as a matter of law and should be dismissed pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). Plaintiff has failed to state a claim of any BIPA violation by White Castle because Plaintiff consented both expressly and implicitly to the collection of alleged biometric data, and Plaintiff has failed to plead allegations sufficient to sustain her claims.

## ARGUMENT

**A.**    **Plaintiff Implicitly and Expressly Consented to Collection, Waived Her Claims Under BIPA in 2004 and 2018, and Is Estopped From Raising Them Now.**

It is undisputed that White Castle instituted a "biometric" system[1] in the early 2000s to securely authenticate employee identities to allow employees to access certain functions in its computer system, electronically sign select documents, and to provide a secondary mode of access to employee paystubs.  White Castle employees could not use the system without proceeding through a registration process that informed the employees about the biometric system.  Employees chose whether to scan their finger and register for the system or not.  Plaintiff attempts to ignore this fact and the fact that on not just one but on two separate occasions, she agreed in writing to provide her finger scan and to use the system.

It is undisputed that White Castle instituted a "biometric" system[2] in the early 2000s to securely authenticate employee identities to allow employees to access certain functions in its computer system, electronically sign select documents, and to provide a secondary mode of access to employee paystubs.  White Castle employees could not use the system without proceeding through a registration process that informed the employees about the biometric system.  Employees chose whether to scan their finger and register for the system or not.  Plaintiff attempts to ignore this fact and the fact that on not just one but on two separate occasions, she agreed in writing to provide her finger scan and to use the system.

---

[1] By using the term "biometric" herein, White Castle does not concede that its system collects or has ever collected "biometric identifiers" as defined by BIPA or that White Castle is subject to regulation by BIPA.

[2] By using the term "biometric" herein, White Castle does not concede that its system collects or has ever collected "biometric identifiers" as defined by BIPA or that White Castle is subject to regulation by BIPA.

Specifically, in 2004, prior to the passage of BIPA, Plaintiff was given the option to register to use White Castle's biometric system. Although Plaintiff now alleges that she was "required" to do so, it is clear that this was not the case. (*See* Motion to Dismiss, Ex. A). Rather, White Castle clearly provided Plaintiff with notice that she was registering with the biometric system as well as with the option to not register. (*Id.*). The 2004 consent form plainly indicated "Biometric Registration," and provided the option of either registering "Biometrics for Electronic Signature" or refusing to do so by clicking "I Do Not Wish To Register In Biometrics." The 2004 consent form explained the purpose of the system and that if an employee did not choose to register, they could print and sign forms by hand. (*Id.*).

Plaintiff elected to consent.

The 2004 consent form makes evident that White Castle informed Plaintiff about the biometric system, its purpose, an alternative to use of the system, and that she voluntarily chose to register her biometrics – years before the Illinois legislature passed BIPA. She could not have registered without receiving the notice. *See* Motion to Dismiss. Plaintiff is estopped from now claiming that she was "required" to scan her finger when the plain language of the consent form provided her an alternative, nor can she claim that White Castle did not inform her that her biometric data was being collected. Plaintiff also concedes that Plaintiff was provided with a more robust disclosure in 2018. Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opposition") at page 6.

Plaintiff tries to characterize Plaintiff's 2018 consent as an argument for "retroactive compliance." She misses the point. White Castle is not arguing retroactive compliance. It is stating simply that Plaintiff knew exactly what she was doing when she elected to use White Castle's system, and she did so for years after receiving disclosures from White Castle in 2004. She then

confirmed her consent in 2018, as discussed in the Motion to Dismiss and *infra*. She should not now be permitted to disingenuously assert she did not know what she was doing.

Even without a consent form, courts in the Northern District have held that implied notice and consent can preclude BIPA liability, dismissing BIPA cases involving employees or consumers who voluntarily submit their fingerprints exactly as Plaintiff did here. For example, in *Aguilar v. Rexnord LLC*, the plaintiff alleged that his employer violated BIPA by failing to provide formal notice and receive consent prior to collecting biometric information. *Aguilar v. Rexnord LLC*, No. 17 CV 9019, 2018 U.S. Dist. LEXIS 110765, at *7 (N.D. Ill. July 3, 2018). The Court held that although plaintiff did not receive formal notice nor give formal consent, he knew his fingerprints were being collected because he scanned them each time he clocked in and out at work, and it was clear that the fingerprints were stored because they were used for authentication purposes. *Id.* at *8. Further, the Court explained, "proper compliance with BIPA's disclosure and written authorization requirements would only have made explicit what should have already been obvious." *Id.* This has also been the conclusion of other Northern District courts that have considered the question in the context of an employer's biometric system. *See Howe v. Speedway LLC,* No. 17-cv-07303, 2018 U.S. Dist. LEXIS 90342 (N.D. Ill. May 31, 2018); *Goings v. UGN, Inc.*, No. 17-cv-9340, 2018 U.S. Dist. LEXIS 99273, at *3 (N.D. Ill. June 13, 2018). The conclusion of the Court in the instant case should be the same, especially because Plaintiff expressly consented to the use of White Castle's biometric system.

Significantly, in *Howe*, the Court considered other cases where the plaintiffs were actually unaware or did not consent to biometric information being taken such as *Patel v. Facebook, Monroy v. Shutterfly, Rivera v. Google,* and *Norberg v. Shutterfly*. The Court distinguished those cases:

> "By contrast, Howe's fingerprints were collected in circumstances under which any reasonable person should have known that his biometric data was being collected. At

the beginning of his employment at Speedway, Howe voluntarily submitted to a fingerprint scan. He then scanned his fingerprint at the beginning and end of each work day, thereby allowing Defendants' system to identify him and track his hours. It should have been readily apparent to Howe that his fingerprint was being scanned and stored, otherwise how would Speedway's time system recognize him based on that fingerprint?" *Howe v. Speedway LLC*, No. 17-cv-07303, 2018 U.S. Dist. LEXIS 90342, at *17 (N.D. Ill. May 31, 2018).

The same can be said of Plaintiff in the instant case. Moreover, unlike in *Aguilar and Howe*, White Castle gave Plaintiff actual notice, and she voluntarily consented to the collection. Plaintiff admits in her Class Action Complaint that she scanned her fingerprint "each time she accessed her paystubs" and "each time she accessed a White Castle computer." (Dkt. 44, ¶¶42, 44). It is likely impossible to determine how many time Plaintiff accessed a White Castle computer, but assuming that Plaintiff received weekly paychecks and elected to access them via a White Castle computer,[3] she may have scanned her fingerprint over 780 times over her 15-year tenure with White Castle before filing this suit. Plaintiff knew her finger was being scanned and certain characteristic points collected because she scanned her finger "each time she accessed her paystubs" and "each time she accessed a White Castle computer" (Dkt. 44, ¶¶42,44), and – based on the allegations as she has pled them – knew that information related to her finger scan was being stored because her finger scan was obviously being compared to a stored set of characteristics in order to authenticate her identity.

Waiver is the voluntary and intentional relinquishment of a known right inconsistent with an intent to enforce that right. *In re Nitz*, 317 Ill.App.3d 119, 130 (2000). Waiver may arise either expressly or by conduct inconsistent with an intent to enforce that right. *Id.* In order to determine the applicability of waiver, one must focus on the conduct of the non-breaching party. *Id.* Plaintiff's conduct, by scanning her finger as frequently as she claims she did since the passage of BIPA in

---

[3] White Castle employees are not required to use a White Castle computer to access their paystubs.

2008, relinquished her rights under BIPA because she knew, based on the consent she agreed to in 2004 and her voluntary use of the finger reader itself, that she was using a "biometric" system. Plaintiff has not alleged that she asked any questions about the system, asked to reverse her consent and not use the system, or expressed any concern whatsoever. Instead, she elected to keep using the system.

The doctrine of equitable estoppel prevents a party from asserting a right it would otherwise be able to assert. *Hubble v. O'Connor*, 291 Ill.App.3d 974, 986 (Ill. App., 1997). Estoppel may arise from silence as well as words. *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 303 (2001). It may arise where there is a duty to speak and the party on whom the duty rests has an opportunity to speak, and, knowing the circumstances, keeps silent. *Id.* It is the duty of a person having a right, and seeing another about to commit an act infringing upon it, to assert her right. She cannot by her silence induce or encourage the commission of the act and then be heard to complain. *Id.* The question of estoppel depends on the facts of each case. *Id.*

As mentioned, Plaintiff, a longtime employee of White Castle, would have scanned her finger hundreds of times in order to authenticate documents, obtain her paystubs, and access certain functions in the White Castle computer system. Not once did Plaintiff complain or request to use a non-biometric option, which White Castle offered and clearly made available since the inception of the system. Plaintiff should not now, years later, be permitted to pursue a lawsuit based on the false premise that she supposedly did not know or did not consent when the undisputed facts are so clearly contrary to these assertions.

Furthermore, in October of 2018, *before filing this action*, Plaintiff signed an updated White Castle Biometric Information Privacy Team Member Consent Form. (Motion to Dismiss, Ex. B). With this form, Plaintiff reaffirmed her election to use finger scans "for the purpose of identifying

[Plaintiff's] signature when using White Castle's proprietary software" and to access secure information systems. (*Id*.). Plaintiff also expressly and voluntarily consented to White Castle's collection, storage and use of biometric data," even if the data were covered by BIPA. (*Id*). Plaintiff was advised in the Consent Form that her "biometric data" would be deleted when her employment ended. (*Id*.). Again, Plaintiff was given the opportunity to either consent or to not provide her finger scan. (*Id*.). Plaintiff not only consented, but she used her registered finger scan to sign the Consent Form. (*Id*.). Plaintiff complains about this in her Opposition, stating, "ironically, she was required to scan her already registered and illegally procured fingerprint to electronically sign this 'consent form'". Ignoring the silly "illegally procured" statement since there was no law governing an employee's decision to give her fingerprint to her employer at the time Plaintiff elected to do so in 2004, this statement flies in the face of reality. Plaintiff was not "required" to do anything. She chose to sign using her finger with full knowledge of what she was deciding to sign and how she was deciding to sign it.

Thus, Plaintiff unequivocally knowingly and voluntarily waived her right to privacy in any purported biometric data, and, in fact, expressly authorized White Castle to collect, store, and use biometric information before and after the passage of BIPA. (Motion to Dismiss, Ex. A and B.). As a result, Plaintiff is now equitably estopped from alleging that she did not consent to the collection of her finger scans and should not be allowed to now, years after her initial consent and after again reaffirming her consent, revoke her consent for a chance at a windfall of either $1,000 or $5,000 for "*each*" time she used her already registered and approved finger scans at work. (Dkt. 44, Prayer for Relief, at 23–24 (emphasis in original).)

**B.**     **Plaintiff Has Not Pled Facts to Support the Assertion That White Castle Negligently Or Intentionally Violated BIPA.**

Plaintiff has not and cannot plead sufficient facts to support her causes of action. The plain language of BIPA states that a plaintiff is only able to recover liquidated damages for negligent and reckless or intentional violations of the statute. 740 ILCS 14/20(1). Plaintiff has not alleged any facts to suggest White Castle engaged in any such conduct. Plaintiff argues that White Castle has mistaken allegations related to culpability with allegations related to damages, citing authority that damages may be plead generally or developed through discovery. Of course that is the case; specific damages are frequently, if not always, determined or confirmed through discovery.

Here, however, Plaintiff has failed to allege the underlying acts or omissions committed by White Castle to support negligent, reckless or intentional violations of BIPA. If there is no negligent, reckless or intentional violation, all of which have well settled legal definitions, there can be no recovery under BIPA. 740 ILCS 14/20(1).

In construing a statute, the primary objective is to ascertain the legislature's intent, and the best indicator of that intent "is the statutory language itself, which must be given its plain and ordinary meaning." *Gurba v. Cmty. High Sch. Dist. No. 155*, 2015 IL 118332, ¶ 10. The words of the statute "cannot be read in a fashion that would render words or phrases meaningless, redundant or superfluous." *Kraft, Inc. v. Edgar,* 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990); *see also Sylvester v. Indus. Comm'n*, 197 Ill. 2d 225, 232 (2001) ("We must construe the statute so that each word, clause, and sentence . . . is given a reasonable meaning and not rendered superfluous, avoiding an interpretation which would render any portion of the statute meaningless or void.").

Plaintiff's opposition argues that a mere conclusory assertion that White Castle violated provisions of BIPA is sufficient for recovery. This is wholly insufficient based on the plain language of BIPA and federal pleading standards. The Court must view the complaint in the light most

favorable to the plaintiff when ruling on a 12(b)(6) motion to dismiss, accepting all well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor. *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere legal conclusions are all that Plaintiff alleges in the instant case. A complaint stating only "bare legal conclusions," even under notice pleading standards, is not enough to survive a Rule 12(b)(6) motion. *Id.* at 547. It must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. *Id.* at 557. If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. See FRCP 12(b)(6); *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987).[4]

Plaintiff has not alleged how any alleged act or omission by White Castle was negligent, reckless or intentional such that she could recover under BIPA. Plaintiff merely recites various sections of the statute and in a conclusory fashion says that White Castle failed to comply with those provisions. Such allegations are insufficient. *Id.*

While Plaintiff cites to *Rosenbach* to argue that a mere violation gives rise to a private right of action, the Illinois Supreme Court's ruling in *Rosenbach* did not address the requirement in Section 20(1) that a plaintiff plead and prove a negligent or other violation of the statute to recover

---

[4] In Illinois, general and conclusory allegations are not enough to state a claim. *Bogenberger v. Pi Kappa Alpha Corp. Inc.*, 2018 IL 120591, ¶ 35. As a result, "[p]laintiffs cannot state a cause of action merely by labeling certain acts or omissions as 'negligent'; instead, plaintiffs must specifically allege the elements of duty, breach of duty, and injury caused by the breach." *McLean v. Rockford Country Club*, 352 Ill. App. 3d 229, 233 (2d Dist. 2004); *Hancock v. Luetgert*, 40 Ill. App. 3d 808, 810 (1976) ("The mere allegations that a defendant's negligence caused an injury . . . are conclusions of the pleader."); *Fitch v. McDermott*, 401 Ill. App. 3d 1006, 1029 (2d Dist. 2010) (affirming dismissal of negligence claim since plaintiff's "conclusions of law were insufficient to sustain a cause of action.").

damages. Instead, the *Rosenbach* decision, rendered only on two certified questions, was limited to holding that an individual whose biometric identifiers or biometric information were collected, retained or used in violation of Section 15 is "aggrieved" and "entitled to *seek* recovery" under BIPA Section 20. *Rosenbach*, 2019 IL 123186, ¶ 33 (emphasis added). However, the ability to seek liquidated damages is a far cry from being automatically entitled to recover liquidated damages, nor is it a free pass when it comes to complying with pleading requirements. Indeed, such a construction would be directly contrary to the express language of the statute and impermissibly render the word "negligently" or "willfully" meaningless, redundant and superfluous. *Kraft, Inc. v. Edgar,* 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990).

Plaintiff also cites to *Standard Mut. Inc. Co. v. Lay*, to argue that liquidated damages are separate and apart from the remaining portions of BIPA. However, *Standard Mut. Inc. Co.*, is distinguishable because it involves violations of the Telephone Consumer Protection Act which unlike BIPA provides for treble damages in addition to liquidated damages. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 33, 989 N.E.2d 591. In *Lay*, the court explained that liquidated damages may serve additional goals than deterrence and punishment and were not designed to be punitive damages. *Id.* On the other hand, BIPA does not provide for punitive damages and the liquidated damage provision is the only remedy for a violation. As such, a showing of at least negligence is required to recover under BIPA. Likewise, *Sekura v. Krishna Schaumburg Tan, Inc*. does not stand for the proposition Plaintiff asserts. *Sekura*, unlike this case, involved a claim for mental anguish due to the alleged violations of BIPA by plaintiff's employer. 2018 IL App (1st) 180175, ¶ 4, 115 N.E.3d 1080. Plaintiff incorrectly alleges that "White Castle's argument was implicitly rejected." The *Sekura* court merely stated that when an Act allows for actual damages *or* liquidated damages, that a plaintiff may sue for liquidated damages based on a violation *or* actual

damages which require evidence such as "medical bills, lost wages, or other out-of-pocket expenses." *Id.* at ¶71. (Emphasis added). The *Sekura* court at no point held that a plaintiff could evade the plain language of the Act--that to recover under BIPA the violation must be negligent, intentional or reckless. *See* 740 ILCS 14/20.

Likely Plaintiff is attempting to gloss over the statutory requirement that to recover a violation must be negligent, reckless or intentional because she understands that she cannot meet that burden. White Castle is not arguing as claimed by Plaintiff that she must "plead the mental state, i.e., negligence, recklessness or intent, of an entity" (Opposition page. 13),[5] it is arguing that Plaintiff must plead *something* as the basis for bringing a lawsuit saying that the conduct of the defendant was negligent, reckless or intentional such that she is entitled to damages. "A word or phrase in a statute should not be interpreted in a vacuum; rather, 'the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *See, e.g., Loja v. Main St. Acquisitions Corp.*, 906 F.3d 680, 683 (7th Cir. 2018).

As explained *supra*, and more fully in Defendant's Motion to Dismiss, White Castle took all reasonable steps it could to ensure Plaintiff's and other employees' privacy and provided Plaintiff with notice of collection and received her consent in 2004, years before BIPA was enacted, and then again in 2018 *before* Plaintiff filed this complaint. White Castle complied with the true purpose of BIPA and should not now be punished for its proactive policies when Plaintiff cannot even articulate how White Castle's conduct was negligent, reckless or intentional.

Accordingly, Plaintiff's allegations do not support any claim that White Castle negligently or intentionally violated BIPA, and the Class Action Complaint should be dismissed.

---

[5] Whether a corporate entity can even have a mental state is an interesting esoteric proposition that will not be addressed here.

**C.**     **Plaintiff Fails to Allege That White Castle Failed to Comply With 740 ILCS 14/15(a).**

Plaintiff has failed to allege a violation of 740 ILCS 14/15(a) as a matter of law because White Castle does, in fact, have a written, publically available policy establishing a retention schedule and guidelines for permanently destroying biometric information. Plaintiff attempts to conflate section 14/15(b) with the requirements under 14/15(a) to assert that a policy must exist before collection. However, as explained in Defendant's Motion to Dismiss, where BIPA requires certain conduct *before* collection or possession, it does so explicitly as it does in section 14/15(b) which limits collection "unless [the entity] first" complies with BIPA's notice and consent provisions. Which Castle provided such notice and consent in 2004 and again in 2018. On the other hand, section 14/15(a) does not require the same, and Plaintiff cannot read additional requirements into BIPA in order to save her deficient complaint. *See Dana Tank Container, Inc. v. Human Rights Comm'n*, 687 N.E.2d 102, 104 (Ill. App. 1997) ("Where the legislature uses certain words in one instance and different words in another, it intended different results.").

Therefore, because White Castle has complied with Section 14/15(a), Plaintiff cannot establish a violation of same, and the Class Action Complaint should be dismissed.

**D.**     **Plaintiff Fails to Allege That White Castle Failed to Comply with 740 ILCS 14/15(b)**

Likewise, Plaintiff has failed to allege a violation of 740 ILCS 14/15(b). Section 14/15(b) requires that entities disclose in writing that biometric identifiers and information is being collected prior to such collection 740 ILCS 14/15(b). As stated above, even before BIPA was enacted, White Castle provided the disclosure to Plaintiff and obtained her voluntary consent. (*See* Motion to Dismiss, Ex. A). Plaintiff claims that the disclosure was insufficient; however, that is not the case. First, in accordance with Section 14/15(b), the 2004 consent form informed Plaintiff, if she chose to register, that biometric information was to be collected, clearly stated that by agreeing she would be registering in White Castle's Biometric System, and made clear that the purpose of collection was to

allow her to authenticate and sign forms via her "biometrics" rather than by hand. (Motion to Dismiss, Ex. A). If nothing else, it is substantial compliance with BIPA coupled with Plaintiff's actual knowledge of White Castle's system and her continued use. Plaintiff was well aware that White Castle's system was instituted to allow employees to quickly and easily access or electronically sign official documents. Plaintiff also attempts to argue that that an electronic release is insufficient, but has not and cannot provide any case law to support this.

White Castle provided notice before BIPA was created, without any legal obligation to do so and out of an abundance of caution for its employees' privacy. It is contrary to the entire purpose of BIPA to now punish White Castle because it disclosed information about its system to its employees, gave them a choice if they wanted to use the system and obtained actual consent from employees *before* BIPA was passed. Moreover, White Castle has since updated its Biometric Information Privacy Consent Form, which Plaintiff again signed and reaffirmed her consent to in October 2018, mere months before filing her initial Class Action Complaint. (Ex. B). Significantly, the 2018 disclosure, like the 2004 disclosure, plainly stated that consent is not required and that employees are free to revoke consent at any time. Plaintiff did not do so throughout her 15 years with White Castle. Plaintiff received actual notice and consented to the collection of biometrics and is now attempting to litigate purely to obtain an unfair and unmerited judgment.

Because White Castle complied with 740 ILCS 14/15(b), Plaintiff's Class Action Complaint should be dismissed.

E.     **Plaintiff Fails to Allege That White Castle Failed to Comply with 740 ILCS 14/15(d)**

Plaintiff's Class Action Complaint should be dismissed because she fails to adequately allege that White Castle violated 740 ILCS 14/15(d). Similar to her allegations based on Section 14/15(a), Plaintiff attempts to conflate the section with section 14/15(b) in order to add additional requirements under the Act. Section 14/15(d) requires that an entity not disclose, redisclose, or

otherwise disseminate a person's biometric information unless that person has consented to the disclosure. 740 ILCS 14/15(d). BIPA does not bar disclosure but merely requires that any disclosure is done with reasonable care. 740 ILCS 14/15(e).

Plaintiff inexplicably cites in her Opposition the Illinois Supreme Court in *Rosenbach* which explained that "[t]he Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 34. White Castle complied with BIPA's purpose; it gave Plaintiff notice and full power to withhold consent both in 2004 and 2018. Plaintiff elected not to do so. The Act does not provide a blanket prohibition on disclosure as Section 14/15(e) outlines the requirements once consent is given. Specifically, Section 14/15(e) requires entities to "store, transmit, and protect from disclosure all …. biometric information" with reasonable care. 740 ILCS 14/15(e). Plaintiff does not allege that White Castle handled her data unreasonably, and in fact, White Castle hosts its own data and there has not been even a single instance of unauthorized access or dissemination of employee data since the system was instituted 15 years ago.

For these reasons, Plaintiff cannot establish a violation of 740 ILCS 14/15(e), and Plaintiff's Class Action Complaint should be dismissed.

**F.    Illinois Workers' Compensation Act Bars Plaintiff Claims.**

Plaintiff's allegations themselves demonstrate that her claim is barred by the IWCA exclusive remedy provision. The IWCA is an employee's exclusive remedy for "accidental injuries . . . arising out of and in the course of employment" and relieves the employer of employee lawsuits seeking "large damages verdicts" such as this BIPA and negligence class action. *Meerbrey v. Marshall Field & Co., Inc.*, 139 Ill.2d 455, 462 (1990); *Cooley v. Power Constr. Co., LLC*, 2018 IL App (1st) 171292 at ¶ 12 (1st Dist. June 11, 2018) ("[e]mployees that are injured at work

do not have a cause of action against their employer, and their exclusive remedy is to apply for benefits under the [IWCA]"). The Illinois legislature could have said that BIPA is not precluded by the IWCA, but did not do so. It passed BIPA with an understanding of the existing overall preclusive effect of the IWCA for injuries that occur on the job.

Plaintiff's arguments boil down to the fact that she thinks the IWCA is unfair. Such arguments have been repeatedly and soundly rejected in favor of the plain meaning of the IWCA. Section 5(a) of the IWCA applies the exclusive remedy provision not only to "common law" actions but also to a "statutory right to recover damages from the employer," i.e., a statute like BIPA. 820 ILCS 305/5(a). This Section further limits employees to the compensation provided by the IWCA when they have a "common law or *statutory right to recover damages* from the employer" for "injury . . . sustained . . . while engaged in the line of his duty." 820 ILCS 305/5(a). Similarly, Section 11 reflects that the compensation provided by the IWCA is the employer's full "measure of responsibility" for "accidental injuries sustained by any employee arising out of and in the course of the employment." 820 ILCS 305/11.

To escape the preclusive effect of these provisions, an employee must prove the injury: (1) was not accidental; (2) did not arise out of his employment; (3) did not occur in the course of the employment; or (4) was otherwise not compensable under the Act. *Fregeau v. Gillespie*, 96 Ill. 2d 479, 483 (1983); *Meerbrey,* 139 Ill.2d at 462-63. Plaintiff has not alleged in her Class Action Complaint that she falls within any of these exceptions to the IWCA's exclusivity rule.

Significantly, Plaintiff has explicitly pled that her alleged injuries arose during the course and scope of her employment because she was "required" to use her employer's biometric system during the course of her job while on company property and from a company computer, bringing her squarely within the plain language of Section 5(a) and Section 11. She has not disputed that the

alleged injuries occurred during the course of or arose during her employment, thus rendering two of the four exceptions to the preclusive effect of the IWCA inapplicable.

Plaintiff has raised nothing to suggest the "accidental" exception applies. To avoid this prong, Plaintiff was required to alleged that White Castle acted deliberately and with specific intent to injure her, but she has no such allegations in her Class Action Complaint. *See Garland v. Morgan Stanley & Co.*, 2013 IL App (1st) 112121, ¶29, *citing Copass v. Illinois Power Co.*, 211 Ill.App.3d 205, 214 (4th Dist. 1991) (plaintiff required to "allege that the defendant acted deliberately with specific intent to injure the employee"); *Mayfield v. ACME Barrel Co.*, 258 Ill.App.3d 32, 35 (1st Dist. 1994) (employer must act with specific intent to injure the employee such that the resultant injury is stripped of its accidental character); *see also Baylay v. Etihad Airways P.J.S.C.*, 222 F. Supp. 3d 698, 70304 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) ("The Illinois Supreme Court has defined the term 'accidental' to be a comprehensive one that is 'almost without boundaries in meaning as related to some untoward event."). White Castle's history of providing notice to its employees of its biometric system—including clear and compliant notice that predated BIPA's enactment—establishes that Plaintiff cannot possibly plead facts that White Castle engaged in deliberate conduct with an intent to injure her.

Finally, the injury is compensable under the IWCA. Plaintiff ignores controlling authority. The Illinois Supreme Court has clearly and repeatedly held that an injury is compensable under the IWCA if it was "suffered in the line of duty," which means it "arose out of and in the course of employment." *See Folta v. Ferro Eng'g*, 2015 IL 118070, ¶¶18-30 (2015); *Caterpillar Tractor Co. v. Industrial Com*, 129 Ill. 2d 52, 57-58(1989). Plaintiff's argument that the IWCA requires a physical injury to occur is misguided, as are her citations to old cases. The Illinois Appellate Court has rejected Plaintiff's arguments and held that the fact that the employee sustained no physical

injury or trauma is irrelevant to the applicability of the IWCA. *Richardson v. County of Cook*, 250 Ill. App. 3d 544, 548 (1st Dist. 1993). Rather, an injury is compensable under the [IWCA] if, as here, it was sustained during the course of employment and arose from that employment. *Id.*

The supplemental "authority" submitted by Plaintiff and citations to decisions of the Circuit Court of Cook County are not binding on this Court, nor are they persuasive. *Green Skyline Solar, LLC v. Sunpin Solar Development, LLC*, No. 16-cv-7659, 2017 U.S. Dist. LEXIS 22615, at *6 (N.D. Ill. Feb. 16, 2017). For example, Plaintiff submits the Circuit Court decision in *Robertson v. v. Hostmark Hospitality Group,* which can be readily distinguished. In *Robertson*, "Defendants offer no explanation as to how Robertson's statutory right to maintain his privacy in his biometric data is a risk or hazard peculiar to his employment as a food and beverage manager." *Robertson v. Hostmark Hospitality Group, Inc., et al.,* Circuit Court of Cook County Case N. 18-CH-5194, page 3. Here, Defendant has explained, and Plaintiff has alleged, that White Castle's system was used by Plaintiff in the course and scope of her employment, falling squarely within the employment context for purposes of the Workers' Compensation preemption. Furthermore, Plaintiff herself alleges that she suffered an "injury in fact" in her Class Action Complaint, *see* Class Action Complaint, Paragraphs 52 and 55, which necessarily stems from her employment. The fact that she fails to specify what that injury is in her complaint does not save her from the preemptive effect of the IWCA.

To the extent this Court is inclined to consider persuasive but non-binding case law, the Court should follow the majority of other jurisdictions that have addressed this issue with respect to employee privacy and find such claims preempted. *See, e.g., Boward-Wedge v. Aquarion Operating Servs. Co.*, 2009 U.S. Dist. LEXIS 101953, at*39-44 (D. Mass. July 7, 2009) (invasion of privacy claim barred by New Hampshire workers' compensation law); *Barber v. Overton*, 2005 U.S. Dist. LEXIS 49506, at *23-24 (W.D. Mich. July 7, 2009) (invasion of privacy claim precluded by

Michigan's workers' compensation law); *Hart v. Frisch's Restaurants, Inc*., 1990 U.S. Dist. LEXIS 16832, at 8 (S.D. Ind. Sept. 28, 1990) (finding an invasion of privacy claim in which plaintiff alleged "mental anguish" to be barred by the Indiana workers' compensation law); *Alves v. Cintas Corp*., 2013 R.I. Super. LEXIS 125, at*20-25 (R.I. Sup. Ct. July 8,2013) (invasion of privacy claim barred by Rhode Island workers" compensation law).

The IWCA clearly preempts Plaintiff's claims under BIPA, and Plaintiff's Class Action Complaint should be dismissed.

## CONCLUSION

WHEREFORE, Defendant, White Castle System, Inc. d/b/a White Castle, respectfully requests that this Honorable Court grant its Motion to Dismiss Plaintiff's Second Amended Class Action Complaint *en toto* with prejudice and award all other relief that is just and proper.

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Mary A. Smigielski
     One of its Attorneys

Mary A. Smigielski - 6243913
Alexander Misakian - 6330146
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
P: 312.345.1718 / F: 312.345.1778
Mary.Smigielski@lewisbrisbois.com
Alexander.Misakian@lewisbrisbois.com
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on August 6, 2019, I filed the foregoing with the Clerk of the

Court using the electronic filing system which will send a copy of the filing to all attorneys of

record.

/s/ Mary A. Smigielski