Exhibit A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JOROME TIMS, individually and
on behalf of all others similarly sit-
uated,

      Plaintiff,

         v.

BLACK HORSE CARRIERS,
      Defendant.

No. 2019-CH-03522

Calendar 16

Judge David B. Atkins

JUDGE DAVID B. ATKINS

FEB 26 2020

Circuit Court-1879

### ORDER

THIS CASE COMING TO BE HEARD on Defendant's Motion to Recon-
sider, or in the Alternative for Appellate Certification, the court having re-
viewed the written submissions and being fully advised in the premises,

THE COURT HEREBY FINDS AND ORDERS:

1. Defendant Black Horse Carriers now seeks reconsideration of this
   court's September 23, 2019 Order denying its Motion to Dismiss, finding
   that §13-205's "catch-all" 5-year statute of limitations applied and thus
   Plaintiff's action was timely filed. The court further found that §13-201's
   1-year limitations period did not apply to Plaintiff's statutory BIPA
   claims.

2. As before, Plaintiff's reliance on *Travelers Cas. and Sur. Co. v. Bowman*[1]
   is misplaced. The Illinois Supreme Court has not held that a 1-year lim-
   itations period applies to statutory claims under BIPA, particularly
   where such claims do not require any publication of the relevant infor-
   mation. Like this court, many courts in this Circuit have found[2] that the
   1-year period set forth in §13-201 does not apply in BIPA cases, but ra-
   ther §13-205's "catch-all" provision is applicable. Accordingly, Defend-
   ant's Motion to Reconsider is denied insofar as the court declines to re-
   consider its substantive ruling in the September 23, 2019 Order.

3. Nevertheless, the court finds Appellate certification of the question is
   appropriate. As noted above, there is no direct authority in Illinois on
   what statute of limitations properly applies to claims under BIPA, and
   the issue has arisen in numerous such cases at the trial level, including
   this one. Especially in light of the impact a 1-year vs. 5-year period
   would have on the facts of this case, some guidance on the matter would

---

[1] 229 Il. 2d 461 (2008)

[2] See, e.g. *Robertson v. Hostmark Hospitality Group*, 18 CH 5194 (Cir. Ct. Cook Cty. July 31,
2019); *Van Jacobs v. New World Van Lines*, 19 CH 02619 (Cir. Ct. Cook Cty. October 29, 2019);
and numerous others cited in full in Plaintiff's response to the instant Motion.

materially advance this litigation. The Motion is therefore granted in part in that the court hereby certifies the following question to the Illinois Appellate Court pursuant to Illinois Supreme Court Rule 308: whether the limitations periods set forth in 735 ILCS 5/13-201 ("Defamation – Privacy") or 735 ILCS 5/13-205 apply to claims brought under the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*

JUDGE DAVID B. ATKINS
ENTERED:

FEB 26 2020

Circuit Court-1879

Judge David B. Atkins

The court.

Exhibit B

*Sandra M. Cianci*
**Kankakee County Circuit Court Clerk**

Filed
Kankakee County
21st Judicial Circuit
4/17/2020
Sandra M Cianci
Circuit Court Clerk

450 East Court Street ● Kankakee, IL 60901
815-936-5700 (tel)  ●  815-939-8830 (fax)
circuitclerk@k3county.net

Date: April 17, 2020

Case Number: **2019 L 000089**

**Mara Baltabols**
**The Fish Law Firm, P.C.**
**admin@fishlawfirm.com**

## NOTIFICATION

**IN RE:**
**SCOTT MARION-VS-RING CONTAINER TECHNOLOGIES**

ENCLOSED, PLEASE FIND A COPY OF THE MINUTES THAT WERE ENTERED ON:  **04/17/2020**
BY THE HONORABLE **JUDGE ADRIENNE W ALBRECHT**

**04/17/2020**
**The court, having considered the Defendant's Motion to Certify certain questions for interlocutory appeal, and Plaintiff's response thereto concludes that the Motion to Certify should be allowed.  This court is not aware of any guidance on any of the three questions which the Defendant asks to certify for appeal from the Third District Appellate Court.  It notes that the Third District is not bound by any precedent from the First District Appellate Court.  It further finds the issues to be  novel. Considering the novelty of the issues, the importance of them, and the numerous cases and litigants to which the answers apply, the court believes the efficiency requires that the Defendant be given an opportunity to ask the Third District Appellate Court to address them. Defendant is directed to draft and submit an order consistent with this ruling.**
**Further, the court directs that all further proceedings in this case be stayed pending disposition of the Defendant's Motion for Leave to Appeal.  (ALBRECHT)teh**

**YOURS TRULY,**

*Sandra M. Cianci*
**CLERK OF THE CIRCUIT COURT**
**KANKAKEE COUNTY COURTHOUSE**
**KANKAKEE, ILLINOIS  60901**

Filed
Kankakee County
21st Judicial Circuit
4/17/2020
Sandra M Cianci
Circuit Court Clerk

*Sandra M. Cianci*
**Kankakee County Circuit Court Clerk**

450 East Court Street ● Kankakee, IL 60901
815-936-5700 (tel)   ●   815-939-8830 (fax)
circuitclerk@k3county.net

Date: April 17, 2020

Case Number: **2019 L 000089**

**Matthew C Wolfe**   mwolfe@shb.com
**Melissa A Siebert**   masiebert@shb.com
**Erika A Dirk**       eadirk@shb.com
**Shook Hardy & Bacon LLP**

**NOTIFICATION**

IN RE:
**SCOTT MARION-VS-RING CONTAINER TECHNOLOGIES**

ENCLOSED, PLEASE FIND A COPY OF THE MINUTES THAT WERE ENTERED ON:  **04/17/2020**
BY THE HONORABLE **JUDGE ADRIENNE W ALBRECHT**

**04/17/2020**
**The court, having considered the Defendant's Motion to Certify certain questions for interlocutory appeal, and Plaintiff's response thereto concludes that the Motion to Certify should be allowed.  This court is not aware of any guidance on any of the three questions which the Defendant asks to certify for appeal from the Third District Appellate Court.  It notes that the Third District is not bound by any precedent from the First District Appellate Court.  It further finds the issues to be  novel. Considering the novelty of the issues, the importance of them, and the numerous cases and litigants to which the answers apply, the court believes the efficiency requires that the Defendant be given an opportunity to ask the Third District Appellate Court to address them. Defendant is directed to draft and submit an order consistent with this ruling.**
**Further, the court directs that all further proceedings in this case be stayed pending disposition of the Defendant's Motion for Leave to Appeal.  (ALBRECHT)teh**

YOURS TRULY,

*Sandra M. Cianci*
**CLERK OF THE CIRCUIT COURT**
**KANKAKEE COUNTY COURTHOUSE**
**KANKAKEE, ILLINOIS  60901**

Exhibit C

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

**ENTERED**
Judge Neil H. Cohen

**MAY 29 2020**

OF COOK COUNTY, IL

| | | |
|---|---|---|
| THOMAS ROBERTSON, | ) | |
| individually, and on behalf of all | ) | |
| others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 18-CH-5194 |
| HOSTMARK HOSPITALITY | ) | |
| GROUP, INC., et al, | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM AND ORDER

Plaintiff Thomas Robertson has filed a motion to reconsider this court's January 27, 2020 Memorandum and Order pursuant to 735 ILCS 5/2-1203(a).

### I. Background

On April 20, 2018, Plaintiff Thomas Robertson ("Robertson") filed his original complaint alleging Defendants Hostmark Hospitality Group, Inc. ("Hostmark") and Raintree Enterprises Mart Plaza, Inc. ("Raintree") (collectively "Defendants") violated the Biometric Information Privacy Act ("BIPA").

On April 1, 2019, this court granted Robertson's motion for leave to file an amended class action complaint (the "Amended Complaint"). The Amended Complaint now alleges three counts, each alleging a violation of a different subsection of section 15 of BIPA. 740 ILCS 14/15.

Count I alleges a violation of subsection 15(a) based upon Defendants failure to institute, maintain, and adhere to a publicly available retention and deletion schedule for biometric data. 740 ILCS 14/15(a). Count II alleges a violation of subsection 15(b) based upon Defendants failure to obtain written consent prior to collecting and releasing biometric data. 740 ILCS 14/15(b). Count III alleges a violation of subsection 15(d) based upon Defendants failure to obtain consent before disclosing biometric data. 740 ILCS 14/15(d).

On July 31, 2019, this court issued its Memorandum and Order denying Defendants' motion to dismiss Robertson's Amended Complaint. In summary, this court held that: (1) Robertson's claim was not preempted by the Illinois Worker's Compensation Act; (2) the applicable statute of limitations was five years, as provided for in 735 ILCS 5/13-205; and (3) Robertson had adequately pled his claim.

As part of the court's July 31, 2019 ruling, this court addressed the parties' arguments regarding the date Defendants stopped collecting Robertson's biometric information but did not address their arguments regarding when Robertson's claims accrued.

On August 30, 2019, Defendants filed their motion to reconsider and certify questions to the appellate court. In their motion to reconsider, Defendants argued, *inter alia*, that this court erred in applying a five-year statute of limitations to Robertson's claim. On September 4, 2019, this court denied Defendants' motion, in part, but allowed further briefing on the issue of the application of the five-year statute of limitation.

On January 27, 2020, this court issued its Memorandum and Order granting in part and denying in part Defendants' motion to reconsider. The court held that Robertson's claims relating to Defendants' alleged violations of section 15(b) and 15(d) accrued in 2010. The court found that the continuing violation rule did not apply to Robertson's claims because the violations of sections 15(b) and 15(d) represented a single discrete act from which any damages flowed. Thus, it was held that Counts II and III were barred by the five statute of limitations.

Regarding Count I, the court viewed section 15(a) as imposing two distinct requirements: (1) requiring private entities to develop a publicly available retention schedule and deletion guidelines; and (2) requiring the permanent deletion of an individual's biometric data, either in accordance with the deletion guidelines or within 3 years of the individual's last interaction with the private entity, whichever is earlier.

The court held that since it was Defendants' stated position that they ceased collection of biometric data in 2013, the math dictated by section 15(a) results in the conclusion that Robertson's claim could not have started to accrue until, at the earliest, 2016. Accordingly, Robertson's claim was not barred by the five-year statute of limitations.

## II. Motion to Reconsider

### A. *Application of the Continuing Violation Rule*

"The intended purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law." Chelkova v. Southland Corp., 331 Ill. App. 3d 716, 729-30 (1st Dist. 2002). A party may not raise a new legal or factual argument in a motion to reconsider. North River Ins. Co. v. Grinnell Mut. Reinsurance Co., 369 Ill. App. 3d 563, 572 (1st Dist. 2006).

Robertson's current Motion to Reconsider of this court's January 27, 2020 Memorandum and Order reiterates his previously stated position that his claim is well within the statute of limitations because he was a victim of a continuing violation of his rights under BIPA. Alternatively, he seeks to certify the question to the First District pursuant to Illinois Supreme Court Rule 304(a). [1]

---

[1]  Not surprisingly, Defendants argue this court properly applied the law surrounding continuing violations to Robertson's BIPA claims. Alternatively, Defendants suggest that if the question is to be certified it should be pursuant to Illinois Supreme Court Rule 308.

Robertson's most recent request suggests that the proper application of the continuing violation rule is illustrated by Cunningham v. Huffman, 154 Ill. 2d 398, 406 (1993).

Cunningham involved a matter of first impression, namely, "whether the Illinois four-year statute of repose is tolled until the date of last treatment when there is an ongoing patient/physician relationship." Cunningham v. Huffman, 154 Ill. 2d 398, 400 (1993). The trial court found that the plaintiff's claims were time-barred and the continuous course of treatment doctrine was not the law in Illinois. Id. at 401. The Appellate Court affirmed the dismissal stating that "in medical malpractice actions, the statute of repose is triggered only on the last day of treatment, and if the treatment is for the same condition, there is no requirement that the negligence be continuous throughout the treatment. Id. at 403.

The Illinois Supreme Court declined to adopt the continuous course of treatment doctrine. Id. at 403-04. Nonetheless, the court held that statutory scheme did not necessarily preclude the cause of action asserted by the plaintiff. Id. at 404. Specifically, the court held that the medical treatment statue of repose would not bar the plaintiff's action if he could demonstrate: (1) that there was a continuous and unbroken course of *negligent* treatment, and (2) that the treatment was so related as to constitute one continuing wrong." Id. at 406 (emphasis in original). The Illinois Supreme Court emphasized "that there must be a continuous course of *negligent* treatment as opposed to a mere continuous course of treatment." Id. at 407 (emphasis in original).

Robertson's assertion is that Cunningham stands for the proposition that "the continuing violation doctrine applies where a plaintiff demonstrates a continuous and unbroken course of conduct, so related as to constitute one continuous wrong." (Motion at 5).

But the Illinois Supreme Court has explicitly rejected Robertson's argument, stating **"[t]he Cunningham opinion did not adopt a continuing violation rule of general applicability in all tort cases or, as here, cases involving a statutory cause of action.** Rather, the result in Cunningham was based on interpretation of the language contained in the medical malpractice statute of repose." Belleville Toyota v. Toyota Motor Sales, U.S.A., 199 Ill. 2d 325, 347 (2002)(Fitzgerald, J)(emphasis ours).

Robertson ignores Belleville and replies that "[t]here is no binding authority to which the Court may turn for guidance on the exact issue regarding whether the continuing violation doctrine applies." (Reply at 4).

While Justice Fitzgerald's written opinion in Belleville is pretty solid authority to the contrary, as this court previously pointed out, the First District has considered "[w]hether a series of conversions of negotiable instruments over time can constitute a continuing violation under Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill 2d 325 (2002), for the purpose of determining when the statute of limitations runs." Kidney Cancer Assoc. V. North Shore Com. Bank, 373 Ill.App.3d 396, 397-98 (1st Dist. 2007). The court reasoned that where a complaint alleges a serial conversion of negotiable instruments by a defendant, it cannot be denied that a single unauthorized deposit of a check in an account opened by the defendant gives the plaintiff a right to file a conversion action. Id. at 405. The court rejected the plaintiff's claim

that the defendant's repeated deposits (identical conversions) following the initial deposit served to toll the statute of limitations under the continuing violation rule. Id. Instead, according to the court, each discrete act (deposit) provided a basis for a cause of action and the court need not look to the defendant's conduct as a continuous whole for prescriptive purposes. Id.

In Rosenbach v. Six Flags Entertainment Corp., 2019 IL 123186, ¶ 33, the Illinois Supreme Court held when a private entity fails to comply with one of section 15's requirements, that violation is itself sufficient to support the individual's or customer's **statutory cause of action**. Id. (emphasis ours).

Robertson's Amended Complaint alleges that his statutory rights were invaded in 2010, when Defendants allegedly first collected and disseminated his biometric data without complying with section 15's requirements. (Amended Complaint at ¶42).

In our January 27, 2020 Memorandum and Order, this court explained that under the general rule a cause of action for a statutory violation accrues at the time a plaintiff's interest is invaded. Blair v. Nevada Landing Partnership, 369 Ill. App. 3d 318, 323 (2nd Dist. 2006) (citing Feltmeier v. Feltmeier, 207 Ill. 2d 263, 278-279 (2003)("where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." Id, 207 Ill. 2d at 279); see also, Limestone Development Corp. v. Village of Lemont, 520 F.3d 797, 801 (7th Cir. 2008) ("The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. [citations]. It is thus a doctrine not about a continuing, but about a cumulative, violation.").

Here, this court respectfully disagrees with Robertson concerning the application of continuing violation rule. It was Defendants' alleged failure to first obtain Robertson's written consent before collecting his biometric data which is the essence of and gave rise to the cause of action, not their continuing failure to do so. Robertson's statutory rights were violated in 2010 when Defendants allegedly first collected and disseminated his biometric data without complying with section 15's requirements.

Per Feltmeier, "where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." Id., 207 Ill. 2d at 279. That Defendants lacked the written release to collect and consent to disseminate Robertson's biometric data from 2010 until they ceased collection, does not change the fact Robertson's statutory rights were violated in 2010 nor does it serve to delay or toll the statute of limitations. Id; see also, Bank of Ravenswood v. City of Chicago, 307 Ill. App. 3d 161, 168 (1st Dist. 1999) (holding that the action for trespass began accruing when the defendant invaded plaintiff's interest and the fact that subway was present below the ground was a continual ill effect from the initial violation but not a continual violation.).

The court did not err in holding that the continuing violation rule did not apply to Robertson's claims.

**B.** *Single vs. Multiple Violations*

Robertson argues that this court erred in holding that his claims for violation of sections 15 (b) and (d) amount to single violations which occurred in 2010. Instead, according to Robertson, each time Defendants collected or disseminated his biometric data without a written release constitutes a single actionable violation.

Robertson's argument is contrary to the unambiguous language of the statute and taken to its logical conclusion would inexorably lead to an absurd result.

\* \* \*

Section 10 of BIPA defines "written release" as: "[. . .] informed written consent or, *in the context of employment, a release executed by an employee as a condition of employment*." 740 ILCS 14/10 (emphasis added).

And, Section 15 (b)(3) of BIPA provides:

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: \*\*\* (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15 (b)(3).

Reading section 10 and 15 of BIPA together makes clear that the "written release" contemplated by section 15 (b)(3) in the context of employment is to be executed as a condition of employment. 740 ILCS 14/10 and 15(b)(3).

As explained by the court in its January 27, 2020 Memorandum and Order, "[t]he most reasonable and practical reading of section 15 (b) requires an employer to obtain a single written release as a condition of employment from an employee or his or her legally authorized representative to allow the collection of his or her biometric data for timekeeping purposes for the duration of his or her employment. Such a release need not be executed before every instance an employee clocks-in and out, rather a single release should suffice to allow the collection of an employee's biometric data." January 27, 2020 Memorandum and Order at 4.

Robertson admits that this is a reasonable reading, (Motion at 7), but argues that Defendants, having failed to obtain a written release or his consent, had to obtain his written release before collecting his biometric data. Since Defendants failed to do, Robertson argues, each time Defendants' collected Robertson's biometric is independently actionable.

But, taken to its logical conclusion Robertson's construction would lead employers to potentially face ruinous liability.

Section 20 of BIPA provides any individual aggrieved by a violation of BIPA with a right of action and further provides that said individual may recover liquidated statutory damages for

5

*each violation* in the amount of either $1,000 for negligent violations or $5,000 for intentional or reckless violations. 740 ILCS 14/20.

Robertson alleges that he was required to scan his fingerprints each time he clocked in and out. (Amended Complaint at ¶44). Therefore, at minimum, there exists at least two potentially recoverable violations for *each day* Robertson worked. Extending this to its logical conclusion, a plaintiff like Robertson could potentially seek a total of $500,000 for negligent violations or $2,500,000 for intentional or reckless violations *for each year*[2] Defendants allegedly violated BIPA.

It is a well-settled legal principle that statutes should not be construed to reach absurd or impracticable results, Nowak v. City of Country Club Hills, 2011 IL 111838, ¶ 21, which is where Robertson's argument would take us. This court finds nothing in the statute as it is written or as it was enacted to indicate it was the considered intent of legislature in passing BIPA to impose fines so extreme as to threaten the existence of any business, regardless of its size.

### C. *Section 15 (d)(1) – Consent for Dissemination*

Section 15 (d)(1) of BIPA provides:

(d) No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

\* \* \* \* \*

740 ILCS 14/15 (d)(1).

Robertson's main contention here is that: (1) he never alleged when Defendants actually disseminated his biometric data; and (2) a defendant can potentially violate section 15(d) multiple times by disseminating an individual's biometric to additional third-parties.

But this court did not rule that section 15(d)(1) can only be violated a single time by a defendant. Rather, it ruled that based on the allegations as pled, Robertson's claim accrued in 2010.

The court recognizes that "a plaintiff is not required to plead facts with precision when the information needed to plead those facts is within the knowledge and control of defendant rather than plaintiff." Lozman v. Putnam, 328 Ill. App. 3d 761, 769-70 (1st Dist. 2002). However, even under this standard a plaintiff may not simply plead the elements of a claim, Holton v. Resurrection Hospital, 88 Ill. App. 3d 655, 658 (1st Dist. 1980), nor does this rule excuse a plaintiff from alleging sufficient facts. Holton, 88 Ill. App. 3d at 658-59.

---

[2] Two violations a day multiplied five days multiplied fifty weeks a year multiplied either 1,000 or 5,000.

If Robertson was actually trying to allege that Defendants violated section 15(d)(1) multiple times by disseminating his biometric data to multiple third parties on many occasions between 2010 and whenever Defendants ceased collection, this allegation is not well-pled and Robertson has not stated a claim for this factual scenario. To be sure, Robertson's Amended Complaint plainly alleges that any dissemination occurred systematically and automatically, but Robertson does not allege any underlying facts which support this assertion.

Robertson also argues that it is possible for a private entity to violate section 15(d) multiple times and that therefore the court erred in holding that Defendants violated Robertson's section 15(d)(1) statutory rights only in 2010. ("Defendants, at any point in time, could have disseminated [his] biometric data to any number of other entities, any number of times, over any period of time," (Motion at 13)).

Robertson alleges Defendants "disclose or disclosed [his] fingerprint data to at least one out-of-state third-party vendor, and likely others," (Id. at ¶33), but the allegation relating to "likely others" is not well pled. The Amended Complaint contains no allegations alleging Defendants disseminated Robertson's biometric data to additional third parties at some undetermined point between 2010 and the date Defendants ceased collection.

The Amended Complaint plainly alleges that any disseminations were, on information and belief, done "systematically or automatically." (Id. at ¶¶ 33, 97). "[A]an allegation made on information and belief is not equivalent to an allegation of relevant fact [citation]." Golly v. Eastman (In re Estate of DiMatteo), 2013 IL App (1st) 122948, ¶ 83 (citation omitted).

Without alleging the supporting underlying facts which lead Robertson to believe that his biometric data was being systemically and automatically disseminated, his allegation regarding additional dissemination to additional third parties remains an unsupported conclusion. The same is true for the allegations Robertson pleads on information and belief. Defendants are not required to admit unsupported conclusions on a motion dismiss.

The court did not err.

### III. Motions to Certify Questions and/or Motions Leave to Appeal

Robertson seeks leave to immediately appeal this court's orders pursuant to Illinois Supreme Court Rule 304(a). Defendants assert that Illinois Supreme Court Rule 308 is the better procedural vehicle and seeks certification of three questions:

1. Whether exclusivity provisions of the Illinois Worker's Compensation Act bar BIPA claims?

2. Whether BIPA claims are subject to the one-year statute of limitations pursuant to 735 ILCS 5/13-201 or the two-year statute of limitations pursuant to 735 ILCS 5/13-202?

3. Whether a claim for a violation of section 15(a) accrues when a private entity first comes into possession of biometric data?

The questions Defendants seek to certify have been either directly addressed or are closely related to questions other judges have certified.

Judge Raymond W. Mittchell in McDonald v. Symphony Bronzeville Park, LLC, Case No. 17 CH 11311 has already certified a similar question to Defendants' first question in an appeal is pending under Marquita McDonald v. Symphony Bronzeville Park, LLC, No. 1-19-2398.

Similarly, in Juan Cortez v. Headly Manufacturing Co., Case No. 19 CH 4935, Judge Anna H. Demacopoulos has certified the second question concerning of what statute of limitations appropriately applies BIPA claims. This court is informed that the First District has accepted the matter and it is currently being briefed.

The third proposed question – as to whether a violation of section 15(a) begins accruing when a private entity first comes into possession of biometric data – is not yet pending on appeal.

### A.    **Rule 308?**

Rule 308(a) provides as follows:

> When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved.

ILL. SUP. CT., R. 308(a).

Rule 308(a) "should be strictly construed and sparingly exercised." Kincaid v. Smith, 252 Ill. App. 3d 618, 622 (1st Dist. 1993). "Appeals under this rule should be available only in the exceptional case where there are compelling reasons for rendering an early determination of a critical question of law and where a determination of the issue would materially advance the litigation." Id.

Because Rule 308 should be strictly construed and sparingly exercised, the court will not certify a question already accepted by the Appellate Court. Accordingly, in the interests of efficiency and of not burdening the First District with issue in cases which echo one another, the court declines to certify questions regarding the applicability of the Illinois Worker's Compensation Act, or questions concerning the appropriate statute of limitations under BIPA. Answers to those questions should be forthcoming through the certifications by Judges Mitchell and Demacopoulos.

Regarding the third question concerning the accrual of section 15(a) claims, the court is willing to certify a question regarding section 15(a) but is not willing to certify the question as currently phrased by Defendants.

As explained by the court in its January 27, 2020 Memorandum and Order, section 15(a) contains two distinct requirements: (1) private entities in possession of biometric data must develop a publicly available retention schedule and deletion guidelines; and (2) those guidelines

8

must provide for the permanent destruction of biometric data when the initial purpose for collecting the biometric data has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

Contrary to Defendants' phrasing of their question regarding section 15(a), the court did not rule that a section 15(a) violation could only accrue once. Rather the court interpreted section 15(a) as imposing two distinct requirements on private entities each with separate accrual dates. The pure legal question is not simply when does the action for a violation of section 15(a) accrue but rather whether the court's interpretation of the statutory language of section 15(a) is correct.

Defendants motion is therefore denied, as written. If they wish, Defendants may resubmit the request to reflect this court's ruling and it will be reconsidered.

### B.    Rule 304(a)?

Rule 304(a) provides as follows:

If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both.

ILL. SUP. CT., R. 304(a).

Rule 304(a) creates "an exception to [the] general rule of appellate procedural law by permitting appeals from trial court orders that only dispose of a portion of the controversy between parties." Mostardi-Platt Associates, Inc. v. American Toxic Disposal, Inc., 182 Ill. App. 3d 17, 19 (1st Dist. 1989). Rule 304(a)'s exception "arises when a trial judge [. . .] makes an express finding that there is no just reason to delay the enforcement or appeal of the otherwise nonfinal order." Id.

Here, the court did issue a final judgment as to fewer than all of the claims on January 27, 2020 when it granted Defendants' motion to reconsider and dismissed Counts II and III of Robertson's Amended Complaint with prejudice because they were barred by the applicable statute of limitations.

However, as explained many issues Robertson would seek review of under Rule 304(a) will be disposed of by the Appellate Court's answers to Judge Demacopoulos' certified question. Therefore, the court declines to make the necessary finding to allow Robertson to appeal pursuant to Rule 304(a).

### III.    Conclusion

Robertson's motion for reconsideration is DENIED.

Robertson's request for a Rule 304(a) finding is DENIED.

Defendants' request for to certify questions pursuant to Rule 308(a) is GRANTED IN PART and DENIED IN PART. The court denies Defendants' questions relating to the application of the Illinois Worker's Compensation Act and the two-year statute of limitations.

9

The court grants Defendants' request in so far as it seeks to certify a question relating to section 15(a) but denies Defendants' question as currently written.

The court orders the parties to confer and to attempt to reach an agreement regarding the phrasing of a question relating to the section 15(a).

The court set the next status date for this matter as June 16, 2020 at 9:30 a.m.

Entered: _____ 5-29-20

Judge Neil H. Cohen

10

Exhibit D

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION
GENERAL CHANCERY SECTION

| | |
|---|---|
| BRANDON WATSON, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LEGACY HEALTHCARE FINANCIAL SERVICES, LLC d/b/a Legacy Healthcare; LINCOLN PARK SKILLED NURSING FACILITY, LLC d/b/a Warren Barr Lincoln Park a/k/a The Grove at Lincoln Park; and SOUTH LOOP SKILLED NURSING FACILITY, LLC d/b/a Warren Barr South Loop, <br><br> Defendants. | CASE No. 19 CH 3425 <br><br> CALENDAR 11 |

## ORDER

This matter came before the Court on Defendants' 2-619 motion to dismiss the putative Class Action Complaint of Plaintiff Brandon Watson. For the reasons explained below, the motion is granted.

## BACKGROUND

Plaintiff was required to scan his hand to clock in and out of work at Defendants' nursing home facilities in Chicago.[1] Plaintiff worked as a Certified Nursing Assistant for Defendant Legacy Healthcare Financial Services, LLC ("Legacy"), which controls 26 nursing home facilities in Illinois. He worked at Defendant Lincoln Park Skilled Nursing Facility, LLC from December of 2012 through February of 2019, and at Defendant South Loop Skilled Nursing Facility, LLC from May through November of 2017.

Plaintiff filed his one-count Class Action Complaint on March 15, 2019, alleging that Defendants failed to properly disclose and obtain releases related to the collection, storage, and use of his biometric information, in violation of the Illinois Biometric Information Privacy Act ("BIPA"). He asks for statutory damages and an injunction under BIPA, individually and on behalf of a class of similarly-situated employees.

---

[1] The facts recited here are based upon the allegations of Plaintiff's Complaint, which are taken as true for purposes of this motion.

Defendants move to dismiss the Complaint under Section 2-619 of the Illinois Code of Civil Procedure, arguing that (1) Plaintiff's claims are time-barred; (2) Plaintiff's claims are preempted by the Illinois Workers Compensation Act; and (3) Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act.

## APPLICABLE LAW

The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 367 (2003). Section 2-619(a)(5) provides for dismissal of a claim that "was not commenced within the time limited by law." Dismissal of a complaint pursuant to section 2-619(a)(9) is permitted where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." *Id.* The affirmative matter must negate the cause of action completely. *Id.* The trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party, and grant the motion only if the plaintiff can prove no set of facts that would support a cause of action. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997).

## ANALYSIS
### (1) Statute of Limitations

Defendants argue that Plaintiff's claim is barred by the statute of limitations. BIPA does not contain its own statute of limitations, so Defendants contend that the claim should be governed by the one-year statute applicable to what it calls the "most analogous common law claim"—invasion-of-privacy claims. That statute provides:

> Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued.

735 ILCS 5/13-201.

This is not the applicable statute of limitations. BIPA's Section 15(d) could be construed to address "publication of matter violating the right of privacy" in prohibiting private entities from "disclos[ing], redisclos[ing], or otherwise disseminat[ing] a person's or a customer's biometric identifier or biometric information . . . ." 740 ILCS 14/15(d). However, in this case Plaintiff did not include a claim under Section 15(d). Rather, he claimed violations only of Sections 15(a) and (b), which require private entities to publicly provide retention schedules and guidelines for permanently destroying biometric information, and to make disclosures and obtain releases before collecting, storing, and using that information. Sections (a) and (b) are violated even if there is no publication. Therefore, the one-year statute does not apply.

Nor does the two-year statute of limitations for a "statutory penalty" (735 ILCS 5/13-202) apply to this case. BIPA's liquidated damages provision is remedial, not penal. In *Rosenbach v. Six Flags Entertainment Corp.*, the Illinois Supreme Court explained that the General Assembly enacted BIPA "to try to head off such problems before they occur," by enacting safeguards and "by subjecting private entities who fail to follow the statute's

2

requirements to substantial potential liability, including liquidated damages . . . ." 2019 IL 123186, ¶ 36. Like the Telephone Consumer Protection Act at issue in *Standard Mutual Ins. Co. v. Lay*, BIPA was "designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils." 2013 IL 114617, ¶ 31.

The applicable statute of limitations is the five-year "catch-all" provision of 735 ILCS 5/13-205. It begins to run on the date the cause of action accrued. Defendants argue that, even if the five-year statute applies, Plaintiff's claim is time-barred because his cause of action accrued when Defendant scanned Plaintiff's hand on his *first* day of work—December 27, 2012. This suit was filed on March 15, 2019, more than six years later.

Plaintiff argues that each daily scan of his hand violated BIPA, so his *last* day of work—February 21, 2019—is the key date for limitations purposes. He argues that all scans in the five years before he filed the Complaint are actionable.

Generally, a cause of action accrues "when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003). Plaintiff argues that his claims are most analogous to wage claims, where each inadequate paycheck gives rise to a separate cause of action. The same cannot be said for each of Plaintiff's hand scans. As the Court in *Feltmeier* stated:

> [W]here there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury.

*Id.* at 79. (emphasis added).

In wage claims, damages flow from each inadequate paycheck. Additional damages accrue every time a paycheck is short. By contrast, Plaintiff's damages flow from the "single overt act" of the initial collection and storage of his biometric data. According to the Complaint, "From the start of Plaintiff's employment with Defendants in 2012," Defendants required him to have his "fingerprint and/or handprint collected and/or captured so that Defendants could store it and use it moving forward as an authentication method." (Cplt ¶18). The Complaint alleges that, *before* collecting Plaintiff's biometric information, Defendants did not provide Plaintiff with the required written notices and did not get his required consent. (Cplt ¶¶ 22, 23). While the Complaint alleges that Plaintiff had to scan his hand every day he worked, all his damages flowed from that initial act of collecting and storing Plaintiff's handprint in Defendants' computer system without first complying with the statute. Plaintiff's handprint was scanned and stored in Defendants' system on Day 1, allowing for authentication every time he signed in.

Plaintiff's cause of action accrued when his handprint allegedly was collected in violation of BIPA on his first day of work on December 27, 2012. Therefore, because Plaintiff filed his case on March 15, 2019, Plaintiff's claim is time-barred under the five-year statute of limitations.

This holding disposes of the case, but the Court will address Defendants' other arguments for the record.

3

(2) Preemption by Workers Compensation Act

Defendant argues that Plaintiff's claims are preempted by the exclusive remedy provisions of the Illinois Workers Compensation Act (the "Act"), 820 ILCS 305/5(a) and 11.

The Act "generally provides the exclusive means by which an employee can recover against an employer for a work related injury." *Folta v. Ferro Eng'g*, 2015 IL 118070, ¶ 14. However, the employee can escape the Act's exclusivity provisions by establishing that the injury "(1) was not accidental; (2) did not arise from his [or her] employment; (3) was not received during the course of employment; or (4) was not compensable under the Act." *Id.*

Defendant argues that none of these exceptions apply in this case. In response, Plaintiff argues that exceptions (1) and (4) both apply—that the BIPA violations were not accidental and were not compensable under the Act.

To show that an injury was not accidental, "the employee must establish that his employer or co-employee acted deliberately and with specific intent to injure the employee." *Garland v. Morgan Stanley & Co.*, 2013 IL App (1st) 112121, ¶ 29. Plaintiff has made no such allegation in his Complaint, so he has not established that the injury was not accidental. To put it another way, the Complaint leaves open the possibility that the injury *was* accidental. Plaintiff implicitly acknowledges this when he alleges that he and the members of the class are entitled to recover "anywhere from $1,000 to $5,000 in statutory damages." (Cplt ¶ 57). Statutory damages of $1,000 may be recovered for *negligent* violations of BIPA (740 ILCS 14/20(1)), and caselaw has equated "negligent" with "accidental" under the Act. *See Senesac v. Employer's Vocational Res.*, 324 Ill. App. 3d 380, 392 (1st Dist. 2001).

Plaintiff also argues that exception (4) applies—the injury was not compensable under the Act. In *Folta,* the Illinois Supreme Court addressed how courts should analyze this exception.[2] Rejecting the argument that the plaintiff's mesothelioma was not compensable under the Act because recovery in his situation was barred by a statute of repose, the court focused on the *type of injury* alleged and whether the legislature intended such injuries to be within the scope of the Act. The court stated, "[W]hether an injury is compensable is related to whether the type of injury categorically fits within the purview of the Act." *Id.* at ¶ 23. Because the Act specifically addressed diseases caused by asbestos exposure (such as mesothelioma), the court found that the legislature contemplated that this type of disease would be within the scope of the Act, and it was therefore compensable under the Act. *Id.* at ¶¶ 25, 36.

The same cannot be said for injuries sustained from violations of BIPA. As the court stated in *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 30, BIPA "is a privacy rights law that applies inside and outside the workplace." By including in BIPA a provision for a private right of action in state or federal court (740 ILCS 14/20), the legislature showed it did not contemplate that BIPA claims would categorically fit within the purview of the Workers Compensation Act. Moreover, BIPA's definition of "written release" refers specifically to

---

[2] *Folta* was decided under both the Workers Compensation Act and the Workers' Occupational Diseases Act, 820 ILCS 310/5(a) and 11, which contain analogous exclusivity provisions.

releases executed by an employee as a condition of employment, further evidence that the legislature did not intend the Workers Compensation Act to preempt BIPA actions in the employment context. 740 ILCS 14/10.

The court holds that BIPA claims are not compensable under the Act. Therefore, BIPA claims fall within the fourth exception to the Act's exclusivity provisions. Plaintiff's BIPA claims are not preempted by the Act.

### (3) Preemption by § 301 of Labor Management Relations Act

Finally, Defendant argues that this case should be dismissed because Section 301 of the Labor Management Relations Act (29 U.S.C. §185(a)) preempts Plaintiff's BIPA claim. That section provides:

> (a) Venue, amount, and citizenship. Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In analyzing this provision, the U.S. Supreme Court stated:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405-06 (1988).

In Illinois, the First District Appellate Court explained the analysis as follows:

> Where a matter is purely a question of state law and is entirely independent of any understanding of the terms of a collective bargaining agreement, it may proceed as a state-law claim. By contrast, where the resolution of a state-law claim depends on an interpretation of the collective bargaining agreement, the claim will be preempted. Where claims are predicated on rights addressed by a collective bargaining agreement, and depend on the meaning of, or require interpretation of its terms, an action brought pursuant to state law will be preempted by federal labor laws. Defenses, as well as claims, must be considered in determining whether resolution of a state-law claim requires construing of the relevant collective bargaining agreement.

*Gelb v. Air Con Refrigeration & Heating, Inc.*, 356 Ill. App. 3d 686, 692-93 (1st Dist. 2005) (internal citations omitted).

5

With their motion, Defendants submitted sworn declarations attaching copies of the collective bargaining agreements ("CBAs") in effect at the Lincoln Park and South Loop nursing facilities where Plaintiff worked. The Lincoln Park CBA with SEIU provided, in relevant part:[3]

> Management of the Home, the control of the premises and the direction of the working force are vested exclusively in the Employer subject to the provisions of this Agreement. The right to manage includes . . . to determine and change starting times, quitting times and shifts, and the number of hours to be worked . . . to determine or change the methods and means by which its operations ought to be carried on; to set reasonable work standards . . . .

(Dfts' Mot., Choi Dec., Exh. A, p. 7).

The South Loop CBA with Local 743 in effect when Plaintiff worked at the South Loop facility in 2017 provided, in relevant part:

> [South Loop] has, retains, and shall continue to possess and exercise all management rights, functions, powers, privileges and authority inherent in the right to manage includ[ing] . . . the right to determine and change schedules, starting times, quitting times, and shifts, and the number of hours to be worked . . . to determine, modify, and enforce reasonable work standards, rules of conduct and regulation (including reasonable rules regarding . . . attendance, and employee honesty and integrity) . . . .

(Dfts' Mot., James Dec., Exh. A, p. 5).

Under *Lingle* and *Gelb*, the question is whether resolution of the BIPA claim in this case depends on an interpretation of the CBAs quoted above. Defendants argue that Plaintiff's claim "cannot possibly be resolved" without interpreting the governing CBAs. The Court disagrees. Resolution of this case is purely a question of state law—whether or not Defendants complied with BIPA by making the required written disclosures and getting the required written release before collecting, storing, and using Plaintiff's biometric information. Even if the CBAs allowed Defendants to set a rule requiring Plaintiff to clock in with his handprint—as part of "determining reasonable work standards"—the Court does not need to interpret the CBAs to decide if Defendants complied with BIPA's requirements. This is so even though the unions may be Plaintiff's "legally authorized representatives" under Section 15(b)(3) for purposes of signing the required release. The Court does not need to interpret the CBA to determine if the release was signed or not.

The CBAs are only tangentially related to this dispute, if at all. As the U.S. Supreme Court stated in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985), "[N]ot every dispute

---

[3] Defendants attached the CBA in effect between May 1, 2017 and April 30, 2020. The relevant CBA would be the one in effect when Plaintiff began work at Lincoln Park on December 27, 2012. Even if Defendants had attached the correct CBA, though, Defendants' preemption argument fails for the other reasons described herein.

concerning employment, or *tangentially involving* a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." (emphasis added). Preemption promotes uniformity of federal labor law, but preemption is required only if resolution of the dispute is "substantially dependent" on analysis of the terms of the CBA. *Id.* at 220.

As the court in *Gelb* directed, this Court has considered the defenses as well as the claims in this case. The Court notes that Defendants have raised no defenses that require an interpretation of the CBAs. Defendants do not assert that the unions received the required BIPA disclosures or signed BIPA releases on behalf of employees. Instead, they only point out that the broad management rights provisions of the CBAs allow them to set work standards. Deciding this case does not require the Court to interpret the CBAs.

In making our holding, the Court respectfully declines to follow the nonbinding Seventh Circuit case of *Miller v. Southwest Airlines*, 926 F. 3d 898 (7th Cir. 2019) and the Northern District of Illinois cases that followed it, *Gray v. Univ. of Chi. Med. Ctr., Inc.*, No. 19-cv-04229, 2019 U.S. Dist. LEXIS 229536 (N.D. Ill. Mar. 26, 2019) and *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942, 2020 U.S. Dist. LEXIS 32577 (N.D. Ill. Feb. 26, 2020). Our case involves a motion to dismiss under Section 2-619 of the Illinois Rules of Civil Procedure, which should be granted "only if the plaintiff can prove no set of facts that would support a cause of action." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997). Here, Plaintiff *could* prove a set of facts under which his claim was not preempted. Defendants did not meet their burden of proof on their 2-619 motion to dismiss argument based on Section 301 preemption.

<u>CONCLUSION</u>

Defendants' Motion to Dismiss is granted under 2-619(a)(5) and Plaintiff's Complaint is dismissed with prejudice for failure to bring suit within five years after the cause of action accrued. This is a final order disposing of all matters.

ENTERED:

Judge Pamela McLean Meyerson

Judge Pamela McLean Meyerson

JUN 10 2020

Circuit Court – 2097

7