**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LATRINA COTHRON, Individually, and on Behalf of All Others Similarly Situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:19-cv-00382** |
| **v.** | ) | |
| | ) | **Honorable John J. Tharp Jr.** |
| **WHITE CASTLE SYSTEM, INC. d/b/a WHITE CASTLE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ...................................... 2

   A.   Procedural Background .................................................................... 2

   B.   Factual Background .......................................................................... 3

III.  LEGAL STANDARD ......................................................................................... 4

IV.  ARGUMENT ................................................................................................... 6

   A.   Defendant Waived Its Argument that Plaintiff's Claims are Barred by the Statute of Limitations. ................................................................................................... 6

   B.   Even if the Defendant Has Not Waived the Argument, Plaintiff's Claims Are Timely.. 7

      1.   A Five-Year Statute of Limitations Period Applies. .................................... 8

      2.   The Accrual Date Under BIPA Depends on the Nature of the Misconduct and Specific BIPA Requirement Violated and Is Not Limited to the First Time an Entity Collects Biometric Data Without Notice or Consent. .......................................... 9

      3.   BIPA Requires Private Entities to Adhere to Certain Safeguards Before, During, and After Collecting Biometric Data. .......................................................... 13

V.   CONCLUSION .............................................................................................. 15

i

## **TABLE OF AUTHORITIES**

**Cases**

*Accord Taylor v. Bd. of Educ. of City of Chicago*, 2014 IL App (1st) 123744, ¶ 46 .................. 12

*Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907 (5th Cir. 1993) ................................... 7

*Am. Fid. Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234 (10th Cir. 2016)...................... 8

*Arizona v. California*, 530 U.S. 392, 410 (2000)............................................................................ 7

*Banks v. Chesapeake and Potomac Telephone Co.*, 802 F.2d 1416 (D.C.Cir.1986)..................... 8

*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., et al.*, 199 Ill.2d 325 (2002) ...... 14, 15

*Buchanan–Moore v. Cnty. of Milwaukee*, 570 F.3d 824 (7th Cir.2009)......................................... 6

*Chavez v. Temperature Equipment Corp.*, No. 2019-CH-2538 (Cir. Ct. Cook Cty., Ill. October 16, 2019) ..................................................................................................................................... 10

*Cortez v. Headly Mfg. Co.*, 19 CH 4935 (Cir. Ct. Cook Cty. Nov. 20, 2019) ................ 11, 13, 16

*Cunningham v. Huffman*, 154 Ill.2d 398 (1993) ........................................................................... 14

*Easterling v. Thurmer*, 880 F. 3d 319 (7th Cir. 2018) ................................................................... 6

*Feltmeier v. Feltmeier*, 207 Ill. 2d 262 (2003) ........................................................................... 17

*Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009)......................................................................... 5

*General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228 (9th Cir. 1989). ...................................................................................... 5

*Gurley v. Swaim*, 517 U.S. 1244 (1996) ........................................................................................ 7

*Heard v. THC – North Shore, Inc. et al.,* No. 2017-CH-16918 (Cir Ct. Cook Cty. Dec. 12, 2019) ............................................................................................................................................. 13, 14

*Hendrix v. City of Yazoo City*, 911 F.2d 1102 (5th Cir. 1990) .................................................... 15

*In re Fosamax (Alendronate Sodium) Products Liability Litigation (No. II)*, 751 F.3d 150 (3d Cir. 2014) ................................................................................................................................... 5

*In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201 (5th Cir. 2010).................................. 5

*Johnson v. Northshore Univ. Healthsystem, Healthport, Inc.*, 405 Ill. App. 3d 1191 (2011) ........ 9

*Loss v. Song,* 89 C 6952, 1992 WL 5915 (N.D. Ill. Jan. 13, 1992). ............................................. 8

*Meyers v. Kissner*, 149 Ill. 2d 1 (1992)....................................................................................... 14

*Mohamed v. WestCare Ill., Inc.,* 786 F. App'x 60 (7th Cir. 2019) ................................................ 6

*National Fidelity Life Insurance Co. v. Karaganis*, 811 F.2d 357 (7th Cir.1987) ........................ 5

*O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394 (7th Cir. 1993) ....................................... 7

*Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766 (N.D. Ill. 2019)................................. 16

*Roach v. Walmart, Inc*., 19 CH 1107 (Cir. Ct. Cook Cty. Oct. 25, 2019) .................................... 10

*Robertson v. Hostmark Hospitality Group, Inc. et al*., 18 CH 5194 (Cir. Ct. Cook Cty., Ill. July 31, 2019) ....................................................................................................................... 10, 14

*Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 36......................................................... 15

*Shultz v. Am. Fam. Mut. Ins. Co.*, 2005 WL 5909003 (N.D. Ill. Nov. 1, 2015) .......................... 15

*Skiba v. Ill. Cent. R.R. Co.,*18 C 3381, 2018 WL 6990673 (N.D. Ill. Dec. 13, 2018)................... 9

*Soltysik v. Parsec, Inc.,* 19 L 136 (Cir. Ct. DuPage Cty. Oct. 17, 2019).............................. 10, 13

*Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir.).................................................................................. 7

*Swanson v. Baker & McKenzie LLP*, 527 F. App'x 572 (7th Cir. 2013)........................................ 6

*Tims v. Black Horse Carriers, Inc*., 2019-CH-03522 (Cir. Ct. Cook Cty., Ill. September 23, 2019) ........................................................................................................................................ 10

*Troop v. Parco, Ltd.,* 19-L-81 (Cir. Ct. Peoria Cty. Nov. 6, 2019) ............................................. 10

*Van Jacobs v. New World Van Lines*, Inc., No. 19 CH 2619 (Cir. Ct. Cook Cty. Oct. 29, 2019) 10

*Woodward v. Dylan's Candybar LLC,*, 19 CH 05158 (Cir. Ct. Cook Cty. Nov. 20, 2019)... 11, 13

## Statutes

735 ILCS 5/13-205 ........................................................................................................................ 7

740 ILCS 14/1 ........................................................................................................................... 1, 7

740 ILCS 14/15(a). ...................................................................................................................... 13

740 ILCS 14/15(b) ....................................................................................................................... 13

740 ILCS 14/15(c) ........................................................................................................................ 13

740 ILCS 14/20 ...................................................................................................................... 11, 14

740 ILCS 14/15(e) ........................................................................................................................ 13

740 ILCS14/15(d) .................................................................................................................. 12, 13

## Rules

Fed. R. Civ. P. 15(a) ...................................................................................................................... 6

Fed. R. Civ. P. 12(b) .................................................................................................................. 4, 6

Fed. R. Civ. P. 12(c) ...................................................................................................................... 4

Fed. R. Civ. P. 12(d) ...................................................................................................................... 4

Fed. R. Civ. P. 12(f) ....................................................................................................................... 5

Fed. R. Civ. P. 12(g)(2)............................................................................................................... 4, 5

Fed. R. Civ. P. 12(h) .................................................................................................... 5

Fed. R. Civ. P. 8(c)(1) ................................................................................................. 6

## I.       INTRODUCTION

The Illinois State Legislature enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.,* for the purpose of safeguarding the integrity and control of highly personal biometric information in a rapidly evolving technological landscape. BIPA effectuates this goal in part by creating simple notice and consent requirements for private entities that collect such information, and includes powerful enforcement mechanisms in the event of non-compliance. Private entities are required to follow certain requirements before, during, and after any collection of biometric identifiers and/or biometric information (collectively referred to as "biometric data"). As described in her pleadings, White Castle Systems, Inc. d/b/a White Castle ("White Castle" or "Defendant") failed to comply with BIPA because it did not provide any of the requisite notices to Plaintiff (or putative class members) or obtain Plaintiff's written consent prior to harvesting her biometric data. Plaintiff brings this action against Defendant for invading her privacy by unlawfully collecting, using, storing, and disseminating her biometric data (*i.e.* fingerprints) in direct violation of BIPA.

Defendant, despite already filing an extensive Rule 12(b)(6) motion to dismiss asserting numerous defenses, now seeks a second bite at the apple. However, Defendant's motion should be denied because a defendant who brings a preliminary motion to dismiss that asserts fewer than all of its available defenses and later attempts to assert an additional Rule 12 defense for the first time, waives the argument. However, even if this Court were inclined to entertain the substantive arguments, Defendant fares no better. Defendant's assertion that Plaintiff's claims under Sections 15(b) and 15(d) of BIPA are time-barred because they could only accrue in approximately 2007 when Defendant first started to illegally collect, store, use, and disseminate her personal biometric data is wrong. Because Defendant committed repeated, continuing, and ongoing violations of

1

BIPA and violated its requirements in several respects, the limitations period accrued only when Defendant came into compliance (if ever). Defendant's Motion should be denied.

## II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.     Procedural Background

On December 6, 2018, Plaintiff filed her original Class Action Complaint in the Circuit Court of Cook County, Illinois. On January 8, 2019, Plaintiff filed an Amended Class Action Complaint. On January 18, 2019, Defendant Cross Match Technologies, Inc.[1] removed the matter to this Court. (D.E. 1.) On March 12, 2019, Defendant filed a Motion to Dismiss Plaintiff's Amended Class Action Complaint. (D.E. 34.) On April 11, 2019, Plaintiff filed a Second Amended Class Action Complaint. (D.E. 44.) Defendant then filed a Motion to Dismiss Plaintiff's Second Amended Class Action Complaint on May 9, 2019. (D.E. 47.) ("Defendant's Motion to Dismiss").

Defendant's Motion to Dismiss raised arguments regarding the waiver of Plaintiff's claims, Plaintiff's failure to plead negligence, recklessness or intent, Plaintiff's failure to plead a violation of BIPA under Sections 15(a), 15(b), and 15(d), and Plaintiff's claims being barred by the Illinois Workers' Compensation Act. (Mot. to Dismiss P's Sec. Am. Compl., D.E. 47.) Nowhere in Defendant's Motion to Dismiss, however, is there any mention of Plaintiff's alleged violation of BIPA's statute of limitations.

On June 16, 2020, the Court found that Plaintiff lacked standing to pursue her Section 15(a) claim, but that Defendant's Motion to Dismiss was denied in all other respects. (D.E. 116.) Specifically, the Court denied Defendant's Motion to the extent it was premised upon waiver and equitable estoppel, ruling that Defendant could not have relied on Plaintiff's 2018 alleged consent form in implementing its 2007 fingerprint-based computer system, or in failing to update its

---

[1] On April 12, 2019, Cross Match Technologies, Inc. was voluntarily dismissed without prejudice from the lawsuit. *See* D.E. 45.

policies after BIPA was passed in 2008. (Mem. Opinion & Order, D.E. 117, at *10.) The Court further denied Defendant's Motion to the extent Plaintiff failed to plead that Defendant acted with the mental state required for statutory damages on the grounds that Plaintiff's Second Amended Complaint stated a plausible claim under Sections 15(b) and 15(d) of BIPA, and that Rule 12(b)(6) does not require her to plead facts that would determine the amount of actual damages she may recover. (D.E. 117, at *12.) Defendant's argument that Plaintiff's BIPA claims were preempted by the Illinois Workers' Compensation Act (IWCA) was also rejected on the grounds that Plaintiff's injury was not compensable under the IWCA. (D.E. 117, at *12.) The Court concluded that Plaintiff successfully pled a Section 15(d) violation and rejected Defendant's argument to the contrary, as Plaintiff did not consent to the disclosure or dissemination of her biometric data, and her complaint included multiple allegations of dissemination. (D.E. 117, at *14-16.) On June 30, 2020, following the Court's Order denying Defendant's Motion to Dismiss, Defendant filed its Answer to Plaintiff's Second Amended Class Action Complaint, and the instant Motion for Judgment on the Pleadings. (D.E. 118, 119.)

## B. Factual Background

Plaintiff was hired by White Castle in 2004 and is currently working as a manager. (*See* D.E. 44, Sec. Am. Compl. ¶ 39.) Beginning approximately three years into Plaintiff's tenure, Defendant required, as a condition of employment, that Plaintiff scan her fingerprints so White Castle could use them as an authentication method for Plaintiff to access the computer as a manager and to access her paystubs as an hourly employee. (*Id.* ¶ 40.) White Castle failed to inform Plaintiff in writing of the purposes and length of time for which her fingerprint data was being collected; failed to secure a written release from Plaintiff to collect, store, or use her fingerprint data; failed to provide a publicly available retention schedule and guidelines for permanently destroying

3

Plaintiff's fingerprint data; and failed to secure Plaintiff's consent before disclosing or disseminating her biometric data to third parties. (*Id.* ¶ 41.)

White Castle stored Plaintiff's fingerprint data (*i.e.,* Plaintiff's personal, private, and proprietary biometric data) in its DigitalPersona employee database(s), provided by Cross Match Technologies, Inc. (*Id.* ¶¶ 2, 29, 42.) Plaintiff was required to scan her fingerprint each time she accessed a White Castle computer and her paystubs. (*Id.* ¶¶ 2, 40, 43, 44.) But it was not until October of 2018—approximately 11 or more years after it first began collecting, storing, using, disclosing and disseminating her biometric data—that White Castle provided Plaintiff with a purported "consent form." (*Id.* ¶ 45.) Ironically, Plaintiff was required to scan her fingerprint, which White Castle had already illegally procured, to electronically sign it. (*Id.* ¶ 46.) Notwithstanding Defendant's contentions, White Castle never informed Plaintiff before harvesting her biometric data of the specific purposes and length of time for which it collects, stores, uses, and/or disseminates her biometric data. (*Id.* ¶¶ 10, 31, 41, 47, 87.) Likewise, White Castle failed to inform Plaintiff of any biometric retention policy it developed, if any, or whether it will ever permanently delete her biometric data. (*Id.* ¶¶ 10, 32, 34, 36, 41, 48, 77-78.) Most egregious, White Castle did not secure Plaintiff's written release allowing it to collect, store, use, or disseminate her biometric data prior to gathering. (*Id.* ¶¶ 10, 31, 49, 86.) Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by White Castle's multiple violations of BIPA.

## III.    LEGAL STANDARD

A Rule 12(c) motion, or a Motion for Judgment on the Pleadings, can be brought after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). As a significant number of federal courts have held, in considering a motion for judgment on the pleadings, the

court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *See In re Fosamax (Alendronate Sodium) Products Liability Litigation (No. II)*, 751 F.3d 150 (3d Cir. 2014). A motion under Rule 12(c) for failure to state a claim is subject to the same standards as a Rule 12(b)(6) motion. *See Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009); *In re Great Lakes Dredge & Dock Co. LLC,* 624 F.3d 201, 209-210 (5th Cir. 2010). A judgment on the pleadings cannot be granted if the complaint raises issues of fact which, if proved, would support recovery. *See General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989). In *National Fidelity Life Insurance Co. v. Karaganis*, 811 F.2d 357 (7th Cir. 1987), the Court required a party moving for judgment on the pleadings to establish that there were no material issues of fact to be resolved and that it was entitled to judgment as a matter of law.

Under Rule 12(b), a motion asserting any Rule 12(b) defenses, such as statute of limitations, must be made before pleading if a responsive pleading is allowed. Fed. R. Civ. P. 12(b). A party that makes a motion under the Federal Rules of Civil Procedure must not make another motion raising a defense or objection that was available to the party but omitted from its earlier motion.[2] Fed. R. Civ. P. 12(g)(2). A party waives any defense listed under Rule 12(b) by omitting it from a motion, or by failing to include it in a responsive pleading. Fed. R. Civ. P. 12(h).

---

[2] Defendant asserts that although the statute of limitations is an affirmative defense, courts may enter judgment on the pleadings if pleadings demonstrate that a claim is barred by the statute of limitations. However, in *Mohamed v. WestCare Ill., Inc.,* 786 F. App'x 60, 61 (7th Cir. 2019), the statute of limitations claim was brought under vastly different circumstances having to do with naming defendants under §1983 in Illinois. Additionally, Defendant cites *Easterling v. Thurmer,* 880 F.3d 319, 323 (7th Cir. 2018), which differs greatly from the continuing violation circumstances at issue in this case, and does not involve BIPA violations. Finally, Defendant's reliance on *Swanson v. Baker & McKenzie LLP,* 527 F. App'x 572, 573 (7th Cir. 2013), is inapposite, as judgment on the pleadings was granted only because there was no conceivable way to save Swanson's claim of racial discrimination, which is not the case here.

## IV.    ARGUMENT

### A.  Defendant Waived Its Argument that Plaintiff's Claims are Barred by the Statute of Limitations.

A party cannot raise a defense or objection that was available to the party but omitted from an earlier motion. *See Buchanan–Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir.2009); Fed. R. Civ. P. 12(g)(2). In this case, Defendant did not raise the defense of statute of limitations in its Motion to Dismiss, even though it had every opportunity to do so. Federal courts have held that a party's failure to raise a defense in a previously-filed motion to dismiss will result in waiver of that argument. *See Arizona v. California*, 530 U.S. 392, 410 (2000) (observing that an "defense" is "ordinarily lost if not timely raised."). In *Arizona,* the Supreme Court rejected the notion that "[A] party may wake up because a 'light finally dawned' . . . after the first opportunity to raise a defense, and effectively raise it." 530 U.S. at 410 (2000). The Seventh Circuit enforces Fed. R. Civ. P. 12(g), which specifically prohibits parties from raising defenses that were available during the motion to dismiss stage and which were purposefully not included, as do federal courts in other circuits. *See Swaim v. Moltan Co*., 73 F.3d 711, 718 (7th Cir.), cert. denied sub nom., *22; *Gurley v. Swaim*, 517 U.S. 1244 (1996); *O'Brien v. R.J. O'Brien & Assocs., Inc*., 998 F.2d 1394, 1398-1399 (7th Cir. 1993); *Albany Ins. Co. v. Almacenadora Somex, S.A.,* 5 F.3d 907, 909 (5th Cir. 1993) ("The meaning of subdivision (g) is clear. If a party seeks dismissal in a pretrial motion based on any of the defenses set out in Rule 12(b), he must include in such motion any other defense or objection then available which Rule 12 permits to be raised by motion."). A defense is "available" unless "its legal basis did not exist at the time of the answer or pre-answer motion, or the complaint does not contain facts sufficient to indicate that a defense was possible." *Am. Fid. Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1241 (10th Cir. 2016)

Defendant's sudden reliance on a statute of limitations defense is waived, as it did not raise it in a timely fashion. *See Banks v. Chesapeake and Potomac Telephone Co*., 802 F.2d 1416, 1427 (D.C.Cir. 1986) (citations omitted). In *Loss v. Song,* the court denied defendant's motion for judgment on the pleadings because allowing defendant's untimely assertion of a statute of limitations defense would have produced a "very unjust result," due to the fact that the limitation defense was not raised in their initial motion to dismiss. No. 89 C 6952, 1992 WL 5915, at *2 (N.D. Ill. Jan. 13, 1992).

In this case, Defendant indisputably failed to raise any purported statute of limitations defense in its Motion to Dismiss, despite knowledge of the availability of the defense. Defendant made arguments regarding waiver of Plaintiff's claims, Plaintiff's failure to plead negligence, recklessness or intent, Plaintiff's failure to plead a violation of BIPA under Sections 15(a), 15(b), and 15(d), and Plaintiff's claims being barred by the Illinois Workers' Compensation Act. Defendant is now making a last-ditch attempt to assert a defense that was available to it when it filed its Motion to Dismiss but failed to do so. This is procedurally improper. As a delay in raising the defense of statute of limitations is a recognized basis for finding a waiver of that defense, this Court should hold that, by omitting the argument from its Motion to Dismiss, Defendant has waived assertion of the defense as a bar to evaluation of Plaintiff's claims on the merits.

**B.      Even if the Defendant Has Not Waived the Argument, Plaintiff's Claims Are Timely.**

Even if the Court does not find that the Defendant waived the argument, Plaintiff's claims are nevertheless timely. Defendant argues that "[n]ot only are Plaintiff's claims untimely, they are not within any arguable BIPA statute of limitations." *See* D.E. 120 at *1. Defendant is wrong. Plaintiff's claims are subject to the default five-year limitations period of 735 ILCS 5/13-205, and the statute of limitations begins to accrue only when Defendant stops violating her rights under

7

BIPA. Because Plaintiff filed her lawsuit within the applicable limitations period, her claims are clearly timely.

### 1. A Five-Year Statute of Limitations Period Applies.

Insofar as the Court wishes to determine the applicable statute of limitations here, Plaintiff's claims are subject to the default five-year limitations period of 735 ILCS 5/13-205. In Illinois, any civil action that does not have an explicit limitations period is assigned a "catch-all" five-year limitations period pursuant to 735 ILCS 5/13-205. Because BIPA does not include its own statute of limitations, Plaintiff's claims fall under Illinois' default, five-year limitation unless a more specific statute applies. *See, Skiba v. Ill. Cent. R.R. Co.,* No. 18 C 3381, 2018 WL 6990673, at *1 (N.D. Ill. Dec. 13, 2018) (citing *Johnson v. Northshore Univ. Healthsystem, Healthport, Inc.*, 405 Ill. App. 3d 1191 (2011) and quoting 735 ILCS 5/13-205). Every trial court that has decided the issue has unanimously held the five-year "catch-all" limitations period applies. *See Robertson v. Hostmark Hospitality Group, Inc. et al*., No. 2018-CH-5194 (Cir. Ct. Cook Cty., July 31, 2019); *Roach v. Walmart, Inc*., No. 2019-CH-1107 (Cir. Ct. Cook Cty. Oct. 25, 2019); *Chavez v. Temperature Equipment Corp*., No. 2019-CH-2538 (Cir. Ct. Cook Cty. Oct. 16, 2019); *Tims v. Black Horse Carriers, Inc*., No. 2019-CH-03522 (Cir. Ct. Cook Cty. Sept. 23, 2019); *Van Jacobs v. New World Van Lines*, Inc., No. 2019-CH-2619 (Cir. Ct. Cook Cty. Oct. 29, 2019); *Troop v. Parco, Ltd.,* No. 19-L-81 (Cir. Ct. Peoria Cty. Nov. 6, 2019); *Soltysik v. Parsec, Inc.,* No. 19 L 136 (Cir. Ct. DuPage Cty. Oct. 17, 2019); *Woodward v. Dylan's Candybar LLC*, No. 2019-CH-05158 (Cir. Ct. Cook Cty. Nov. 20, 2019); *Cortez v. Headly Mfg. Co*., No. 2019-CH-4935 (Cir. Ct. Cook Cty. Nov. 20, 2019). This Court should similarly find that Plaintiff's claims fall under the five-year "catch-all" statute of limitations.

2.     **The Accrual Date Under BIPA Depends on the Nature of the Misconduct and Specific BIPA Requirement Violated and Is Not Limited to the First Time an Entity Collects Biometric Data Without Notice or Consent.**

Defendant argues that "[u]nder any arguable limitations period … Plaintiff's Section 15(b) and Section 15(d) claims are time-barred because she did not bring them until much more than five years had passed from her first alleged finger-scan, when her claim (sic) accrued." *See* D.E. 120 at *4. According to Defendant, because it began harvesting Plaintiff's fingerprints for the first time in approximately 2007, ***before BIPA was even enacted***, Plaintiff was on notice of her potential causes of action then, and the statute of limitations began to run. Not so. Because Defendant committed repeated, continuing, and ongoing violations of BIPA and violated its requirements in several respects, the limitations period accrued only when Defendant came into compliance (if ever).

Violations of BIPA are either a repeated or continuing violation, resulting in the limitations period beginning to run the last time a person's fingerprints are illegally collected. Plaintiff does not allege a single, isolated violation of BIPA, but rather that Defendant violated BIPA by (1) failing to institute, maintain, and adhere to a publicly-available retention schedule and destruction guidelines prior to possessing her biometric data; (2) failing to obtain informed, written consent and release prior to obtaining her biometric data each day of her employment,; and (3) disclosing Plaintiff's biometric data without written consent. Thus, Plaintiff's BIPA claims are actually premised upon Defendant's illegal and continuing collection, storage, use, and dissemination of her biometric data.

To determine the date of accrual, Defendant's conduct may be viewed in one of two ways. First, as numerous courts have already held, it is to deem Defendant's ongoing collection and storage of Plaintiff's biometric data as a "continuing" injury that does not cease until Defendant

stops violating BIPA. Thus, "the statute of limitations [does] not begin to run until the date of the last injury or when the tortious acts cease." *Hyon Waste Mgmt. Servs., Inc. v. City of Chicago*, 14 Ill. App. 3d 757, 762-63 (1991) (citation omitted); *See also Accord Taylor v. Bd. of Educ. of City of Chicago*, 2014 IL App (1st) 123744, ¶ 46 ("[U]nder the 'continuing tort' or 'continuing violation' theory, where the tort involves continuous or repeated injurious behavior, by the same actor and of a similar nature, the limitations period is held in abeyance and the plaintiff's cause of action does not accrue until the date the final injury occurs or the tortious act cease").

The continuing injury doctrine is not a novel concept. It is a well-established tenet of Illinois law. While not binding, the majority of courts to have considered whether the continuing violation doctrine applies to BIPA claims have either agreed that the doctrine applies or held that the determination is not properly made at this stage of the proceedings.[3] For example, in *Woodard v. Dylan's Candybar LLC*, Judge Demacopolous held that the continuing violation doctrine applies to the plaintiff's BIPA claims, holding that the defendant's "on-going collection of [p]laintiff's biometric data is a 'continuing injury,' one that cannot cease until a defendant stops violating BIPA." (Exhibit B at p. 14.) Again, in *Cortez, et al. v. Headly Manufacturing Co.*, in holding that plaintiffs' cause of action under BIPA did not accrue until their last day of employment, the court ruled that, as the defendant "was not BIPA compliant, and drawing all inferences in [p]laintiffs' favor as this Court must on any motion to dismiss, this Court cannot presume that [p]laintiffs' information was only logged and mismanaged at the initial biometric scan." (Exhibit C at pg. 8.) In *Soltysik v. Parsec*, Judge Mallen, noting the similarities between continuing BIPA violations

---

[3] Exhibit A, *Heard v. THC – North Shore, Inc. et al.,* No. 2017-CH-16918 (Cir Ct. Cook Cty. Dec. 12, 2019); Exhibit B, *Woodard v. Dylan's Candybar LLC*, No. 2019-CH-05158 (Cir. Ct. Cook Cty. Nov. 20, 2019); Exhibit C, *Cortez et al. v. Headly Manufacturing Co.,* No. 2019-CH-04935 (Cir. Ct. Cook Cty. Nov. 20, 2019); Exhibit D, Report of Proceedings, *Soltysik v. Parsec, Inc.*, No. 19-L-136 (Cir. Ct. DuPage Cty. Oct. 17, 2019).

and continuing negligent medical care, held that the statute of limitations begins to run on the date of the last violation. (Exhibit D at 35: 8-18.) The ruling in *Soltysik* follows a long and unbroken chain of consistent appellate holdings. *See, e.g., Cunningham v. Huffman*, 154 Ill.2d 398, 406 (1993) (finding that when a physician engages in a continuous and unbroken course of negligent treatment, and the treatment is "so related as to constitute one continuing wrong," the statute of limitations will not start to run until the last date of negligent treatment). Finally, in *Heard v. THC-Northshore*, Judge Valderrama held that the court cannot make the fact-intensive determination required to rule on application of continuing violation doctrine on a motion to dismiss, finding that "more information is required to resolve these factual disputes." (Exhibit A at pg. 10.) Each opinion analyzing the time when BIPA claims accrue is factually indistinguishable from this case. In each case, plaintiffs assert that their employers violated BIPA by collecting their biometric data as a means to track their time and attendance without first obtaining their consent or providing them notice. (*See* Exhibits A-D.)[4]

The other way to determine the accrual date is by viewing Defendant's conduct as a series of separate, individual violations, where a cause of action accrues upon each violation of BIPA. *See Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., et al.*, 199 Ill.2d 325, 349 (2002) (citing *Meyers v. Kissner*, 149 Ill.2d 1, 10-11 (1992) (continuing private nuisance gave rise over and over again to causes of action, and limitations period merely specified the window in time for which monetary damages may be recovered prior to filing complaint); *see also Hendrix v. City of*

---

[4] Defendant relies heavily on two outlier opinions, *Robertson v. Hostmark Hospitality Grp.*, No. 2019-CH-05194 (Cir. Ct. Cook Cty. May 29, 2020), and *Watson v. Legacy Healthcare Fin. Servs., LLC*, No. 2019-CH-03425 (Cir. Ct. Cook Cty. June 10, 2020), to support its contention that Plaintiff's claims accrued in 2007. However, both opinions erroneously mischaracterize defendants' actions as a single, overt wrong that occurred only at the initial instance of collection while ignoring all the impermissible conduct during subsequent years. The Parties in *Robertson* are presently formulating a question for certification for appeal under Il. S. Ct. R. 308.

*Yazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990) (finding where initial statutory violation outside the limitations period is repeated later, each violation begins the limitations period anew, and recovery may be had for those violations that occurred within the limitations period). In this way, Plaintiff's BIPA violations are similar to claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"). *See Shultz v. Am. Fam. Mut. Ins. Co.*, 2005 WL 5909003, at *5 (N.D. Ill. Nov. 1, 2015) ("An FLSA claim accrues at each regular payday immediately following the work period during which the services, for which compensation is sought, were rendered") (internal quotations omitted). Under this analysis, Plaintiff can recover for each violation of BIPA within the applicable limitations period.

BIPA allows an "aggrieved" person to recover for "each violation" of the law, not just the first. 740 ILCS 14/20; *see also Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 36. Plaintiff alleges that Defendant collected, stored, used, and disseminated her biometric data not only the first day that she was required, as a condition of employment, to scan her fingerprints to access the computer and her paystubs, but on each subsequent day she worked and was required to scan her fingerprints. Her allegations are clear and specific: Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's multiple violations of BIPA, and it was not until October of 2018 – approximately 11 or more years after Defendant first began collecting, storing, using, disclosing, and disseminating her biometric data – that Defendant finally secured Plaintiff's alleged written consent, meaning Plaintiff plainly filed her action well within the five-year limitations period.[5] As explained in *Cortez*, it is illogical for the Court to assume,

---

[5] As several courts have held, each time a private entity scans an individual's fingerprint with a biometric timekeeping device is potentially a distinct and separate violation of BIPA. In *Peatry v. Bimbo Bakeries USA, Inc.*, Judge Ellis held "a violation of at least some of BIPA provisions at issue allegedly occurred every time [Plaintiff] and the putative class clocked in and out of work." 393 F. Supp. 3d 766, 769 (N.D. Ill. 2019). The Court further noted, "[s]pecifically, § 15(d) makes it a violation to 'disclose, redisclose, or otherwise disseminate' biometric information, 740 Ill. Comp. Stat. 14/15(d), which suggests that each time

especially at the pleading stage, before the onset of any discovery, and contrary to Plaintiff's explicit allegations, that the one and only instance that Defendant could have violated BIPA is at the time of its first biometric collection. *See* Exhibit C, *Cortez et al. v. Headly Manufacturing Co.,* No. 2019-CH-04935 at *8 (Cir. Ct. Cook Cty. No. 20, 2019). A holding that the only opportunity Plaintiff has to recover for a violation of her rights under the statute stems from when her biometric data is first collected or disseminated is unworkable and would lead to absurd results.[6] *Id.*

### 3. BIPA Requires Private Entities to Adhere to Certain Safeguards Before, During, and After Collecting Biometric Data.

If the Court were to accept Defendant's theory that BIPA claims accrue only at the moment it first collected biometric data, the majority of the protections provided by BIPA would simply vanish.[7] To fully protect the right of Illinois residents to control their biometric data, the General Assembly requires private entities to adhere to several, easy-to-follow statutory requirements. First, under Section 15(a) of BIPA, any private entity that possesses biometric data must create a publicly accessible policy regarding its retention schedule and destruction policy, and actually adhere to it. 740 ILCS 14/15(a). Under Section 15(b), before collecting biometric data, private entities must: (1) inform the individual in writing that biometric data is being collected and stored; (2) inform the individual in writing of the purposes and length of time in which the individual's

---

[Defendant] allegedly disclosed [Plaintiff]s biometric information by sharing it with a third party vendor, a new violation occurred …." *Id.* (citing 740 ILCS 14/15(d)).

[6] Plaintiff alleges Defendant disclosed her biometric data without notice or consent to at least two third party vendors, DigitalPersona and Cross Match Technologies, Inc., and likely others, as well as other third parties that host the biometric data. (*See* D.E. 44, Sec. Am. Compl. ¶ 55.) While the full extent of Defendant's disclosure and dissemination will be uncovered in discovery, Plaintiff alleges that Defendant improperly disseminated her biometric data to third parties throughout her employment and still to this day – yet another separate claim under BIPA.

[7] "The purpose behind a statute of limitations is to prevent stale claims, not to preclude claims before they are ripe for adjudication … and certainly not to shield a wrongdoer …." *Feltmeier v. Feltmeier*, 207 Ill.2d 262, 283 (2003) (internal citations omitted).

biometric data is being collected, stored, and used; and (3) secure written consent from the individual. 740 ILCS 14/15(b). Sections 15(c) and (d) limit the sale, trade, and disclosure of an individual's biometric data. 740 ILCS 14/15(c), (d). Finally, Section 15(e) provides security standards a private entity in possession of biometric data must follow for storing the biometric data. 740 ILCS 14/15(e).

Plaintiff alleges that Defendant violated each and every one of these provisions and with the exception of her Section 15(a) claims based on Article III standing grounds, this Court held that all of her causes of action are viable. Not only did Defendant unlawfully collect fingerprints (personal, sensitive, proprietary biometric data) of putative class members, but it also unlawfully stored and disseminated it to at least two third-party vendors, and likely others. The Illinois Supreme Court correctly observed that "[t]he strategy adopted by the General Assembly through the enactment of the Act is to try to head off such problems before they occur." *Rosenbach*, 2019 IL 123186, ¶ 36. BIPA accomplishes this in two ways. *Id*. First, BIPA imposes safeguards to protect an individual's privacy rights in their biometric data before the data can be compromised. *Id*. "The second is by subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses '***for each violation***' of the law (*id.* § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown." *Id*. (quoting 740 ILCS 14/20) (emphasis added). It is inconceivable that the Illinois legislature intended for claims to accrue only at one possible time (*i.e.,* the first time an entity collects biometric data) when it is readily apparent that entities can continuously and repeatedly engage in the kind of conduct BIPA is designed to deter. As such, this Court should hold that Plaintiff's claims are timely, as her cause of action under BIPA accrued within the appropriate five-year statutory limitations period.

14

## V.     CONCLUSION

For all the reasons stated above, Defendant's Motion for Judgment on the Pleadings should

be denied.

Date:   July 14, 2020                                Respectfully Submitted,

                                                     /s/ Andrew C. Ficzko
                                                     Ryan F. Stephan
                                                     James B. Zouras
                                                     Andrew C. Ficzko
                                                     **STEPHAN ZOURAS, LLP**
                                                     100 N. Riverside Plaza, Suite 2150
                                                     Chicago, Illinois 60606
                                                     312.233.1550
                                                     312.233.1560 *f*
                                                     rstephan@stephanzouras.com
                                                     jzouras@stephanzouras.com
                                                     aficzko@stephanzouras.com

                                                     **ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on July 14, 2020, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

*/s/ Andrew C. Ficzko*