# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LATRINA COTHRON, individually and on behalf of all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) WHITE CASTLE SYSTEM, INC. d/b/a ) WHITE CASTLE, ) ) Defendant. ) | Case No. 1:19-CV-00382 <br><br> Honorable John J. Tharp, Jr. |

**DEFENDANT WHITE CASTLE SYSTEM, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Melissa A. Siebert
Benjamin E. Sedrish
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Telephone.: 312.704.7700
Facsimile:   312.558.1195
masiebert@shb.com
bsedrish@shb.com

*Attorneys for Defendant*
*White Castle System, Inc.*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ..............................................................................................................................1

ARGUMENT ......................................................................................................................................2

I.     WHITE CASTLE DID NOT WAIVE ITS STATUTE OF LIMITATIONS
       AFFIRMATIVE DEFENSE ...............................................................................................2

II.    PLAINTIFF'S CLAIMS ARE UNTIMELY .....................................................................4

CONCLUSION ...................................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albany Ins. Co. v. Almacenadora Somex, S.A.*,
 5 F.3d 907 (5th Cir. 1993) ...............................................................................................3

*Arizona v. California*,
 530 U.S. 392 (2000) ........................................................................................................3

*Buchanan–Moore v. Cnty of Milwaukee*,
 570 F.3d 824 (7th Cir. 2009) ..........................................................................................3

*Carmichael v. Laborers' & Ret. Bd. Employees' Annuity & Benefit Fund of Chi.*,
 2018 IL 122793 ...............................................................................................................9

*Carter v. Gomberg*,
 2020 WL 1468592 (N.D. Ill. Mar. 25, 2020) ..................................................................3

*Cortez v. Headly Mfg. Co.*,
 No. 2019-CH-04935 (Cir. Ct. Cook Cty. Nov. 20, 2019) ...............................................8

*Edgenet, Inc. v. Home Depot U.S.A., Inc.*,
 658 F.3d 662 (7th Cir. 2011) ..........................................................................................2

*Feltmeier v. Feltmeier*,
 207 Ill. 2d 263 (2003) .....................................................................................................6

*Heard v. THC – Northshore, Inc.*,
 No. 2017-CH-16918 (Cir. Ct. Cook Cty. Dec. 12, 2019) ...............................................7

*Hyon Waste Mgmt. Servs., Inc. v. City of Chi.*,
 214 Ill. App. 3d 757 (1st Dist. 1991) ..............................................................................1

*Jagiello v. Beverly Glen Homeowners' Assoc.*,
 2019 IL App (2d) 180621-U ...........................................................................................5

*Levin v. Abramson*,
 2020 WL 2494649 (N.D. Ill. May 13, 2020) ..................................................................3

*Loss v. Song*,
 1992 WL 5915 (N.D. Ill. Jan. 13, 1992) .....................................................................3, 4

*Peatry v. Bimbo Bakeries USA, Inc.*,
 393 F. Supp. 3d 766 (N.D. Ill. Mar. 25, 2020) ...............................................................9

**Page(s)**

*Richardson v. Kharbouch*,
    2020 WL 1445629 (N.D. Ill. Mar. 25, 2020) ...................................................................3

*Robertson v. Hostmark Hospitality Grp., Inc.*,
    No. 18-CH-5194 (Cir. Ct. Cook Cty. May 29, 2020) ...............................................2, 7, 9

*Ruebe v. Partnerre Ireland Ins. DAC*,
    2020 WL 3618683 (N.D. Ill. July 2, 2020) ......................................................................2

*Soltysik v. Parsec Inc.*,
    No. 19-L-136 (Cir. Ct. DuPage Cty. Oct. 17, 2019) ........................................................8

*Swaim v. Moltan Co.*,
    73 F.3d 711 (7th Cir. 1996) .............................................................................................3

*Watson v. Legacy Healthcare Fin. Servs.*,
    No. 19-CH-03425, at 3 (Cir. Ct. Cook Cty June 10, 2020) .............................................7

*Woodard v. Dylan's Candybar LLC*,
    No. 2019-CH-05158 (Cir. Ct. Cook Cty. Nov. 20, 2019) ................................................8

**Statutes**

740 ILCS 14/10 ............................................................................................................................9

**Rules**

Federal Rule of Civil Procedure 8(c)(1) .......................................................................................2

Defendant White Castle System, Inc. ("White Castle") respectfully submits this Reply Memorandum of Law in Further Support of Its Motion for Judgment on the Pleadings.

## INTRODUCTION

In Illinois, the purpose of a statute of limitations "is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions." *Hyon Waste Mgmt. Servs., Inc. v. City of Chi.*, 214 Ill. App. 3d 757, 762 (1st Dist. 1991) (citations omitted). Here, Plaintiff alleges that she began scanning her finger in 2007, one year before BIPA was enacted. Plaintiff contends she scanned her finger every day thereafter, which would include every day after BIPA's effective date of January 1, 2008. *See* Opp. at 9. Then, she waited 10 years after BIPA's enactment to bring her claim against White Castle. This is precisely the type of stale BIPA claim that other courts have deemed untimely.

To avoid the consequences of her delay, Plaintiff first trots out a nonsensical theory that White Castle waived its statute-of-limitations defense by not bringing it in its Motion to Dismiss. Plaintiff can cite only one case in this Circuit that so holds, and in citing that case, misstates and omits facts that demonstrate why that case is such an outlier. In fact, in the Seventh Circuit, a motion for judgment on the pleadings under Rule 12(c) is the preferred way to assert the affirmative defense of statute of limitations.

Plaintiff's more substantive arguments fare little better. She argues that BIPA claims are either a continuing tort, essentially tolling the statute of limitations until the *last* time her biometric information was scanned or disclosed, or a series of individual torts, each actionable. In the context of this case, the initial injury alleged by Plaintiff is the first time her biometric information was collected or disclosed without her written consent. To hold otherwise would simply destroy the statute of limitations, forgiving unreasonable delays like Plaintiff's here. And if, as Plaintiff argues, BIPA created separate liability each time Plaintiff scanned her finger,

businesses throughout the State would face astronomical damages figures, particularly where dozens or hundreds of employees scanned their hands or fingers twice a day for years. The Court should not assume that the General Assembly would have intended to cripple the State's economy in so roundabout a manner. *See Robertson v. Hostmark Hospitality Grp., Inc.*, No. 18-CH-5194 (Cir. Ct. Cook Cty. May 29, 2020), at 5 (holding that a per scan damages reading of BIPA "taken to its logical conclusion would inexorably lead to an absurd result").

In sum, Plaintiff waited 10 years to file her complaint, and nothing in her Opposition excuses that delay. For that reason, White Castle seeks entry of a judgment that Plaintiff's claims are untimely.

## ARGUMENT

**I. WHITE CASTLE DID NOT WAIVE ITS STATUTE OF LIMITATIONS AFFIRMATIVE DEFENSE**

Plaintiff first contends that White Castle waived its statute of limitations argument because it did not raise that argument in its motion to dismiss. Opp. at 6–7. This argument lacks validity. "Statute of limitations" is expressly listed as an affirmative defense in the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(c)(1). Courts in this District have held that "[a] motion for judgment on the pleadings is a better way to raise affirmative defenses than a motion to dismiss." *Ruebe v. Partnerre Ireland Ins. DAC*, 2020 WL 3618683, at *11 (N.D. Ill. July 2, 2020); *see also* Dkt No. 117 at 9 ("[A]ffirmative defenses are generally not proper grounds for granting a Rule 12(b)(6) motion."). Instead, a defendant "should answer and then move under Rule 12(c) for judgment on the pleadings." *Id.* (quoting *Burton v. Ghosh*, 2020 WL 3045954, at *3 (7thCir. 2020)); *see also Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 665 (7th Cir. 2011) ("When the complaint itself contains everything needed to show that the defendant must prevail

on an affirmative defense, then the court can resolve the suit on the pleadings under Rule 12(c)."). The Second Amended Complaint contains sufficient facts to decide this Motion.

Courts regularly consider limitations defenses on Rule 12(c) motions for judgment on the pleadings. *See, e.g.*, *Levin v. Abramson*, 2020 WL 2494649, at *3 (N.D. Ill. May 13, 2020) (holding that the court would construe a Rule 12(b)(1) motion based on the statute of limitations as a Rule 12(c) motion instead); *see also Carter v. Gomberg*, 2020 WL 1468592, at *4 (N.D. Ill. Mar. 25, 2020) ("In fact, the Seventh Circuit has noted that dismissal under Rule 12(b)(6) on the basis of statute of limitations is 'irregular,' because the defendant bears the burden of truth."); *Richardson v. Kharbouch*, 2020 WL 1445629, at *6 (N.D. Ill. Mar. 25, 2020) ("At most, at the pleading stage, a dismissal on statute-of-limitations grounds might be proper on a Rule 12(c) motion for judgment on the pleadings . . . .").

Plaintiff's citation of *Loss v. Song*, 1992 WL 5915 (N.D. Ill. Jan. 13, 1992), does nothing to further her argument.[1] *See* Opp. at 7. Plaintiff begins by providing the Court with an incomplete quotation. While Plaintiff quotes the *Loss* court's statement that it would have been a "very unjust result" to allow the defendant to revive its statute of limitations argument, she omits the remainder of the sentence, which notes that the defendant there "**totally conceded the point in the reply brief to their initial motion to dismiss**." *Loss*, 1992 WL 5915, at *3 (emphasis

---

[1] The other cases Plaintiff cites for general propositions concerning waiver bear no similarity to the current case. Indeed, the first case cited by Plaintiff, *Buchanan–Moore v. Cty of Milwaukee*, 570 F.3d 824 (7th Cir. 2009), does not even stand for the proposition Plaintiff says, nor does it contain any language relevant to the current motion. The next, *Arizona v. California*, involved the waiver of issues that parties failed to raise for **10 years** in multiple rounds of litigation over the same subject matter. 530 U.S. 392, 408–10 (2000). Others are similarly inapposite. *See Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir. 1996) (addressing the timeliness of *in personam* jurisdictional challenges to default judgment); *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909 (5th Cir. 1993) (holding that under Rule 12(g), a venue challenge should have been brought in defendant's first motion to dismiss, not its second motion to dismiss).

3

added). Along the same lines, Plaintiff further misstates the facts of *Loss* when she asserts that "the limitation defense was not raised in their initial motion to dismiss." Opp. at 7. In fact, the defendant in *Loss* filed a motion to dismiss that included a statute of limitations defense, but after the plaintiff filed its opposition, the defendant's reply withdrew the statute of limitations argument and stated in its brief that "the [p]laintiff correctly states the law." *Loss*, 1992 WL 5915, at *1. Then, after "two years of discovery and after the filing of other pleadings and motions," the *Loss* defendant sought to re-raise the issue in a Rule 12(c) motion. *Id.* Based on these specific, unusual facts, including an outright concession by the defendant, the District Court held that, "after full briefing and ruling on defendant's former motion to dismiss, and long after the outset of discovery," allowing the defendant to re-raise the issue would be unjust, particularly because if the defense were successful, "considerable expenditures of plaintiffs' time and money will have been wasted." *Id.* at *2.

In contrast, the parties here have not begun the discovery process, aside from participating in the District's Mandatory Initial Discovery Pilot ("MIDP") program, which the parties completed before the Motion to Dismiss was decided. White Castle's April 3, 2020 MIDP disclosures expressly indicate that it is raising the one-year statute of limitations in this case —including citations to case law holding that BIPA claims accrue upon the first allegedly unlawful scan. Additionally, White Castle diligently filed its Rule 12(c) motion on the same day it filed its Answer setting forth its statute of limitations affirmative defense. White Castle has not waived its statute-of-limitations defense.

**II.      PLAINTIFF'S CLAIMS ARE UNTIMELY**

Plaintiff suggests that, "[i]nsofar as the Court wishes to determine the applicable statute of limitations here, Plaintiff's claims are subject to the default five-year limitations period of

4

735 ILCS 5/13-205." Opp. at 8. Even if that statute of limitations applies, Plaintiff's claims are untimely.[2]

With respect to the accrual of her claims, Plaintiff begins by misstating White Castle's argument. White Castle did not argue that Plaintiff was "on notice of her potential cause of action" in 2007, before BIPA was even enacted, thus triggering the statute of limitations. *See* Opp. at 9. Instead, White Castle argued the following: "according to Plaintiff's own allegations, her Section 15(b) and 15(d) claims accrued in 2008, during the first post-BIPA finger-scan that she alleges violated BIPA." Dkt No. 120 at 7 (citing SAC ¶¶ 39–41; Affirmative Defenses ¶¶ 6-7); *see also* Opp. at 9 (contending White Castle "fail[ed] to obtain informed, written consent and release prior to obtaining her biometric data **each day of her employment**").

Plaintiff proceeds to argue that "[v]iolations of BIPA are either a repeated or continuing violation, resulting in the limitations period beginning to run the last time a person's fingerprints are illegally collected." Opp. at 9. Plaintiff presents two possible views: either the alleged BIPA violations constitute a single, continuing act, or that White Castle's conduct constituted "a series of separate, individual violations, where a cause of action accrues upon each violation of BIPA." Opp. at 11. Neither view makes sense.[3]

Limitations periods "begin[] when the plaintiff is injured, not when the plaintiff realizes the consequences of the injury or the full extent of the injury." *Jagiello v. Beverly Glen*

---

[2] In any event, White Castle respectfully suggests that determining the proper limitations period is not before the Court, given that White Castle has argued that Plaintiff's claims are untimely no matter what statute of limitations applies. Should the Court wish to determine the applicable limitations period, White Castle requests additional briefing on the issue.

[3] It is worth noting here that, in making these arguments, Plaintiff describes the claims she has leveled against White Castle, but she makes one salient error in doing so, suggesting that her Section 15(a) claim is still in the case. *See* Opp. at 9. But the Court held that she lacks standing to pursue that claim in federal court, and dismissed it. Dkt No. 117 at 4–8.

5

*Homeowners' Assoc.*, 2019 IL App (2d) 180621-U, ¶ 71; *see also Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003) (In general, a cause of action accrues "when facts exist that authorize one party to maintain an action against another."). In other words, "where there is a single overt act from which subsequent damages may flow, the statute [of limitations] begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, **and this is so despite the continuing nature of the injury**." *Feltmeier*, 207 Ill. 2d at 278–79 (emphasis added).

Plaintiff's conception of BIPA as one continuing violation does not accord with the text of the statute. Section 15(b) prohibits the collection or obtaining of biometric identifiers without "**first**" providing notice and getting written consent. The "violation," then, is the failure to provide notice and get consent **before** obtaining biometric information; it is not the collection of that biometric information. *Cf.* SAC ¶ 86 ("Defendant systematically and automatically collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without <u>first</u> obtaining the written release required by 14/15(b)(3)."). This is even clearer when considering what the "injury" is: the injury is not the collection of biometric information, but the possession or transmission of that information *without informed consent*. *See also Robertson* at 5. Once a defendant allegedly has someone's biometric data, or a third party has obtained that biometric data from a defendant, the injury has occurred. The harm the legislature intended to prevent occurred as soon as that collection or transmission occurred without informed consent; there is no additional injury for each additional, subsequent collection or transmission. For this reason, the analogy to physician malpractice (*see* Opp. at 11)—a distinct area of the law with its own jurisprudence—is inapt. Continued negligent treatment *does* further endanger patients, either by making their illness worse or prolonging their pain and suffering. Not so with alleged BIPA violations.

6

The courts in *Robertson* and *Watson* took this approach. In determining that the continuing violation doctrine does **not** apply to BIPA claims, the court in *Robertson* noted that the real purpose of the doctrine is to "allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. It is thus a doctrine not about a continuing, but about a cumulative, violation." *Robertson*, at 4 (quoting *Limestone Development Corp. v. Village of Lamont*, 520 F.3d 797, 801 (7th Cir. 2008)). Accordingly, a defendant's "alleged failure to first obtain" a person's "written consent before collecting his biometric data . . . is the essence of and gave rise to the cause of action, not their continuing failure to do so." *Id.* On this basis, the Court expressly rejected application of the continuing violation rule. *Id.* And in *Watson*, the court agreed with the defendant, who argued that the first scan, on the first day of work, was the proper accrual date because "all his damages flowed from that initial act of collecting and storing [Plaintiff's] handprint . . . without first complying with the statute." *Watson v. Legacy Healthcare Fin. Servs.*, No. 19-CH-03425, at 3 (Cir. Ct. Cook Cty June 10, 2020).

The cases Plaintiff cites are not persuasive and do not settle the matter. The first, *Heard v. THC – Northshore, Inc.*, No. 2017-CH-16918 (Cir. Ct. Cook Cty. Dec. 12, 2019) (attached as Exhibit A to Plaintiff's Opposition), she cites for the proposition that accrual is a fact-intensive inquiry not susceptible to decision at the pleading stage. Opp. at 11. In that case, the parties appeared to disagree on when collection occurred, or "when the Defendants allegedly disclosed Plaintiffs' biometric data and information to a third-party vendor." *Heard* at 10. Here, in contrast, Plaintiff herself has pleaded these facts, which White Castle accepts as true for the purposes of this motion only: Plaintiff was required to regularly scan her finger to access White Castle computers and her paystub, and her finger-scan was "automatically" disclosed to out-of-

7

state vendors. *See* Mem. at 2–3.[4] The facts as Plaintiff alleged them are sufficient to determine that her claim is untimely.

The second, *Dylan's Candybar*, merely discussed accrual in *dicta*. *Woodard v. Dylan's Candybar LLC*, No. 2019-CH-05158 (Cir. Ct. Cook Cty. Nov. 20, 2019) (attached as Exhibit B to Plaintiff's Opposition). There, the plaintiff first had his biometric information collected in 2016, and filed his complaint in 2019. *Id.* at 14. Because the court held that a five-year limitations period applied, "it is unquestionable that the complaint was timely filed." *Id. Cortez*, decided on the same day by the same judge, misapprehends the nature of the violation and the injury. There, the court held that defendant engaged in a continuing violation until the last date of plaintiffs' employment because the defendant "was still not compliant with BIPA," and "Plaintiffs scanned their biometric information while still employed by Defendant at that time." *Cortez v. Headly Mfg. Co.*, No. 2019-CH-04935, at 8 (Cir. Ct. Cook Cty. Nov. 20, 2019) (attached as Exhibit C to Plaintiff's Opposition). But, as discussed above, the statutory violation and injury occurred during Plaintiff's first post-BIPA finger-scan; no additional injury could have occurred with subsequent scans. The fourth opinion, a transcript of proceedings in DuPage County, does not appear to definitively hold that the there was a continuing violation. While the court there said, without citing case law, that "I think" there is a continuing violation, he later appeared to retreat from that conclusion, saying that "maybe it's not a continuing violation." *Soltysik v. Parsec Inc.*, No. 19-L-136 (Cir. Ct. DuPage Cty. Oct. 17, 2019), at 35 (attached as Exhibit D to Plaintiff's Opposition).

---

[4] Citations to "Mem." refer to White Castle's Memorandum of Law in Support of its Motion for Judgment on the Pleadings, filed on June 30, 2020. Dkt. No. 120.

8

As a fallback, Plaintiff also posits BIPA violations as "a series of separate, individual violations," Opp. at 11, but this interpretation is even less supportable, as it would lead to absurd, crippling results. At least one court has held that although "uncertain," it is not "legally impossible" for a plaintiff to recover on a per-scan basis, *see Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 769–70 (N.D. Ill. 2019), but it does not appear that any court has actually awarded damages on such a theory. BIPA expressly contemplates claims by employees against employers, *see* 740 ILCS 14/10, and a number of plaintiffs have brought claims against their employers for daily hand- or finger-scans. *See Robertson* at 5. As the court in *Robertson* noted, per-scan liability "would lead employers to potentially face ruinous liability." *Robertson* at 5. If employees clocked in and out each day, employers would be subject to a $2,000 (or $10,000, if willful) fine per day, per employee. If companies were forced to pay $10,000 per week, or $500,000 per year, per employee, hundreds of businesses in the state would fold. The legislature surely could not have intended such an absurd result. *See Robertson* at 5 (holding that per-scan liability, "taken to its logical conclusion would inexorably lead to an absurd result"); *see also Carmichael v. Laborers' & Ret. Bd. Employees' Annuity & Benefit Fund of Chi.*, 2018 IL 122793, ¶ 45 ("In construing a statute, we must presume that the legislature did not intend an absurd result.").

BIPA claims present neither a continuing tort nor a series of individual torts. Because a plaintiff can bring a claim the first time her finger scan is collected or disclosed without her consent, the statute of limitations begins to run at that time. Plaintiffs should not be allowed to wait indefinitely to bring their claims, thereby circumventing statutes of limitations completely.

9

## CONCLUSION

For the reasons set forth above and in White Castle's opening brief, White Castle respectfully requests that the Court grant its motion for judgment on the pleadings and dismiss Plaintiff's claims under Section 15(b) and Section 15(d) of BIPA.


Dated: July 21, 2020                                Respectfully submitted,

                                            By:   */s/ Melissa A. Siebert*
                                                  One of Defendant's Attorneys

Melissa A. Siebert (#6210154)
Benjamin E. Sedrish (#6308141)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Telephone.: 312.704.7700
Facsimile:  312.558.1195
masiebert@shb.com
bsedrish@shb.com

*Attorneys for Defendant*
*White Castle System, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on **July 21, 2020**, she caused a true and correct copy of the foregoing **DEFENDANT WHITE CASTLE SYSTEM, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS** to be filed electronically. Notice of this filing will be sent to all parties registered on this Court's ECF system by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Melissa A. Siebert*