**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LATRINA COTHRON, individually and on behalf of all others similarly situated,** ) ) ) **Plaintiff,** ) ) v. ) ) **WHITE CASTLE SYSTEM, INC. d/b/a WHITE CASTLE,** ) ) ) **Defendant.** ) | **Case No. 1:19-cv-00382** |

**CLASS COUNSEL'S UNOPPOSED PETITION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD TO THE CLASS REPRESENTATIVE**

i

I.   **Introduction**

Class Counsel, Stephan Zouras, LLC, respectfully move for an award of attorneys' fees in the amount of $3,522,915.00, or 37.5% of the Settlement Fund, costs in the amount of $6,725.40 and administration expenses in the amount of $41,000.00. Additionally, Class Counsel move for an Incentive Award of $7,500.00 to the Class Representative Latrina Cothron ("Class Representative", "Named Plaintiff", and/or "Cothron") in recognition of the risks she undertook and the time she expended on behalf of the Class.

Class Counsel's efforts in this matter from case initiation, extensive motion practice, including at the Illinois Supreme Court level, participation in the Mandatory Initial Discovery Pilot Program, the exchange of Rule 26 disclosures, responding to written discovery, settlement negotiations, and through the notice and approval stages, have been without compensation, and their entitlement to payment has been wholly contingent upon the result achieved. Exhibit 1, Declaration of Andrew C. Ficzko ("Ficzko Decl."), ¶ 17. Class Counsel's efforts have resolved this action before incurring additional time, difficulties, expense, and uncertainty of further litigation and without the years of delay any appeal might cause, which has preserved judicial resources and benefitted the Class.

II.  **BACKGROUND**

   A. **Class Counsel Performed Substantial Work in this Case and Achieved Significant Results for the Class.**

Class Counsel have vigorously litigated this case for over five and a half years. Plaintiff filed her original Class Action Complaint in the Circuit Court of Cook County on December 6, 2018, alleging violations of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, for Defendant White Castle System, Inc. d/b/a White Castle's ("Defendant" or "White Castle") use of a Finger-Scanning System without first complying with BIPA's notice and consent

1

requirements.[1] On January 18, 2019, this action was removed to the Northern District under the Class Action Fairness Act ("CAFA"). (Dkt. 1.) On April 11, 2019, Plaintiff filed her Second Amended Class Action Complaint ("Complaint") alleging White Castle repeatedly collected, stored, used, and disseminated her biometric identifiers and biometric information (collectively, "biometric data") for at least ten years without providing the disclosures required by BIPA or securing her informed written consent. (Dkt. 44.) On May 9, 2019, White Castle filed a motion to dismiss Plaintiff's Complaint (Dkt. 47). On June 16, 2020, the Court held Plaintiff lacked standing to pursue her Section 15(a) claim, but otherwise denied White Castle's motion as to the remaining claims. (Dkt. 117.) On June 30, 2020, White Castle filed both its Answer (Dkt. 118), and a Motion for Judgment on the Pleadings, arguing Plaintiff's claims were time-barred under the maximum five-year limitations period. (Dkt. 119.) On August 7, 2020, the Court denied White Castle's motion, holding Plaintiff's Section 15(b) and (d) claims are timely. (Dkt. 125.) On August 17, 2020, White Castle filed a Motion to Amend Ruling to Certify Question for Appeal (Dkt. 134), and the Court granted its request, certified the ruling for appeal to the Seventh Circuit, and stayed the matter pending the Seventh Circuit's decision. (Dkt. 140.)

The Seventh Circuit, on November 9, 2020, accepted White Castle's petition to appeal (Dkt. 144), and on November 10, 2020, the Court stayed all proceedings pending disposition of the appeal. (Dkt. 145.) Plaintiff thereafter requested the Seventh Circuit to certify the issue to the Illinois Supreme Court for resolution under Seventh Circuit Rule 52 and, following briefing and oral argument, the Seventh Circuit held Plaintiff met the requirements for certification and certified the question to the Illinois Supreme Court on December 20, 2021. (Dkt. 149.) The Illinois Supreme

---

[1] On January 8, 2019, Plaintiff filed an Amended Class Action Complaint to name the correct White Castle entity. (Dkt. 1-1.) Plaintiff also named Cross Match Technologies, Inc. as an additional defendant in both the original and amended complaint, but ultimately voluntarily dismissed Cross Match Technologies, Inc. on April 12, 2019. (Dkt. 45.)

Court accepted the certified question and, on July 18, 2023, found that a BIPA claim "accrues under the Act with every scan or transmission of biometric identifiers or biometric information without prior informed consent." *Cothron v. White Castle Sys. Inc.,* 2023 IL 128004, ¶ 45, *as modified on denial of reh'g* (July 18, 2023). On September 14, 2023, the Seventh Circuit filed its Notice of Issuance of Mandate (Dkt. 169), filed its Final Judgment affirming the judgment of this Court (Dkt. 170), and filed its Opinion, including lifting the stay (Dkt. 171).

On December 4, 2023, this Court lifted the stay and shortly thereafter, discovery commenced, and the Parties exchanged their respective Rule 26(a)(1) disclosures and both Parties propounded and responded to written discovery, including requests for documents, interrogatories, and requests to admit facts. With leave from the Court (Dkt. 188), on January 10, 2024, White Castle filed an Amended Answer. (Dkt. 190.) However, before proceeding with any further written discovery and before beginning oral discovery, the Parties agreed to discuss a possible resolution, which culminated in an agreement in principle that lead to a fully executed settlement agreement on April 23, 2024, attached hereto as Exhibit 2. Plaintiff filed her Preliminary Approval Motion (Dkt. 200) on April 23, 2024. On April 25, 2024, the Court preliminarily approved the Parties' non-reversionary Settlement; certified the class; appointed Stephan Zouras, LLC, as Class Counsel; appointed Plaintiff Latrina Cothron as Class Representative; approved the proposed plan for giving Notice to the Settlement Class; and set a final approval hearing. (Dkt. 204.)

> B. **Class Members Were Notified of Class Counsel's Proposed Award of Fees and Costs, Administration Expenses, and Incentive Award to the Class Representative Through Class Notice.**

Class Counsel entered into a retainer with the Named Plaintiff allowing Class Counsel to apply for a reasonable percentage of a recovery as a contingency fee payment as well as their out-of-pocket expenses. (Ex. 1, Ficzko Decl., ¶ 18.) Consistent with this agreement, the Settlement

3

provides that Class Counsel may apply for an award of attorneys' fees in the amount of 37.5% of the Settlement Fund, or $3,522,915.00, plus litigation costs of $6,725.40, and settlement administration expenses not to exceed $41,000.00. (Exhibit 2, Settlement Agreement, ¶ 63.) Class Members were notified of these terms, and the proposed Incentive Award to the Class Representative, in the Notice of Proposed Class Action Settlement ("Class Notice"). (Exhibit 3, Declaration of Amy Lechner of Simpluris, Inc. In Support of Final Approval of Settlement, ("Admin. Decl."), at ¶¶ 5-6, 13); *see also* Exhibits B-D to Admin Decl, Class Notice.) The Class Notice also informed Class Members of their right to object or exclude themselves from the Settlement and described the procedures to do so. (Ex. 3, Admin. Decl., ¶ 6.) Zero Class Members requested exclusion from the Settlement or objected to it. (*Id.*, ¶¶ 18, 20.)

### III. ARGUMENT

#### A. An Award of Attorneys' Fees and Costs Is Permitted Under BIPA.

Prevailing plaintiffs, including plaintiffs who favorably settle their cases, are entitled to reasonable attorneys' fees and costs under BIPA. *See* 740 ILCS 14/20(3) ("… a prevailing party may recover for each violation … reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses …"). Class Counsel request 37.5% of the Settlement Fund, or $3,522,915.00, for attorneys' fees, plus $6,725.40 for their out-of-pocket litigation costs. As explained below, these requests are fair given the excellent settlement result and the time and effort expended by Class Counsel in litigating the case, which is consistent with attorneys' fee awards in other BIPA class settlements.

#### B. The Court Should Award Attorneys' Fees Based on the Percentage Method.

When counsel's efforts result in the creation of a common settlement fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444

U.S. 472, 478 (1980); *see also Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247-48 (7th Cir. 2014); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of a common fund "entitles [counsel] to a share of that benefit as a fee"). The reasoning for the percentage of the fund method is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988) (internal quotation marks omitted); *see also Boeing*, 444 U.S. at 478 (prevents inequity "by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit").[2]

The use of a common fund approach is especially appropriate to use for the fee award in cases based on fee-shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . ." *Skelton*, 860 F.2d at 256; *Florin*, 34 F.3d at 564. Here, the Settlement Fund has been created in exchange for the release of the Class Members' claims under BIPA, both for statutory damages and attorneys' fees, costs, and expenses. *See* 740 ILCS 14/20.

Next, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' attorneys to engage in prolonged litigation to increase billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) When a settlement provides for attorneys' fees limited to a percentage of the total fund, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F.

---

[2] Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994) – the norm in the Seventh Circuit is to use the percentage of the fund method in common settlement fund cases like the one here. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) The Seventh Circuit has even cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys").

Supp. 382, 386 (N.D. Ill 1996) *aff'd*, 160 F.3d 361 (7th Cir. 1998).

Furthermore, judicial resources are preserved because the percentage method saves the Court from the burdensome task of reviewing extensive billing records. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"). Courts in this district routinely apply the percentage method to common fund settlements and have acknowledged the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making).

### C. Class Counsel's Requested Attorneys' Fees Are Fair and Reasonable.

#### 1. The results and benefits conferred upon the class justify the fee award.

The Settlement will provide the Settlement Class Members with substantial monetary relief. Pursuant to the Settlement, White Castle will establish a non-reversionary Settlement Fund of $9,394,440.00, from which each Settlement Class Member who did not opt out, including the Class Representative, shall automatically be entitled, without the need to submit a claim form, to a payment of an equal *pro rata* share of the Settlement Fund in the amount of $968.00, less Court-approved Administrative Fees paid to the Settlement Administrator, a Fee Award to Class Counsel, and an Incentive Award to the Class Representative. (Ex. 3, Settlement Agreement, ¶¶ 34, 45, 46.) If the Fee Award, Administrative Fees, and the Incentive Award are approved, each Settlement Class Member will receive approximately $599.43.

6

The monetary relief secured by Class Counsel in the Settlement Agreement excels in comparison to many other statutory privacy class actions, especially settlements that have provided no relief to the class or only *cy pres* relief. *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement). Some BIPA settlements are no different and in fact have also depressed the amount defendants have to pay with credit monitoring as well as caps on the amount claiming class members can recover. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cty.) (providing credit monitoring only and no monetary relief); *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) (paying a cap of $270 to individuals who filed claims). Thus, the relief secured here is extraordinary.

Finally, and maybe most importantly, the Settlement serves the purpose of BIPA by vindicating rights of those the Act was enacted to protect. The Settlement does not present any signs of collusion but rather was resolved after over five and a half years of intense litigation, including Class Counsel securing a favorable decision at the Illinois Supreme Court level. Throughout the pendency of this matter, Class Counsel have spent considerable time researching BIPA and the rapidly evolving case law in this area, analyzing the strengths and weaknesses of the claims asserted, consulting with undisclosed experts, participating in extensive motion practice, issuing and responding to discovery, and negotiating a resolution that ultimately led to the culmination of the Settlement. (Ex. 1, Ficzko Decl. ¶¶ 10, 15, 17).

### 2. Continued litigation presented a significant risk to the class.

Although Plaintiff is confident she has a strong case on liability, the undecided questions surrounding BIPA present more than the usual risks of complex actions, in which there are always significant uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"). The Settlement here provides immediate relief to the Settlement Class Members while avoiding potentially years of additional complex litigation and appeals and the risk that comes along with it. *See Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("[a] dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). Absent the settlement, Plaintiff faced potentially significant legal hurdles in attaining class action certification and in proving liability and damages. On liability, Plaintiff would also have to prove any alleged non-compliance with BIPA was negligent, intentional, or reckless to warrant statutory liquidated damages.

Accordingly, the Settlement was the product of well-informed judgments about the adequacy of the resolution. Class Counsel, who are well-versed, highly experienced, and intimately familiar with BIPA litigation, are well-positioned to assess the strengths and weaknesses of the claims and defenses of this case, as well as the factual and legal issues, sufficient to make an informed recommendation about the value of the claims, the time, costs and expense of protracted litigation, appeals, and the adequacy of the Settlement reached. (Ex. 1, Ficzko Decl. ¶ 15.) The stage of the litigation has advanced to a state that Class Counsel can fairly and fully evaluate the value of the Settlement, and Class Counsel have determined that the Settlement is fair and reasonable in light of the risks, costs, and delay of further litigation. (*Id.*)

### 3. There are no objections to Class Counsel's request for fees.

Settlement Class Members had the opportunity to object to Class Counsel's fees before the deadline for objections. *See* Fed. R. Civ. P. 23(h). The Class Notice notified Class Members of the percentage of the Settlement Fund that Class Counsel would seek in attorneys' fees. The Settlement Administrator has thoroughly implemented the notice plan and the Objection/Exclusion deadlines have passed. Not a single Class Member objected to the settlement, nor requested exclusion from it. The lack of any opposition to the Settlement or Class Counsel's fee request, demonstrates overwhelming support for the Settlement.

### 4. Analysis of the Market for Legal Services Supports Class Counsel's Request.

When assessing a request for attorneys' fees, courts "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). Therefore, courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigating when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They "must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005)

Here, Class Counsel's request is based on the market in the Northern District of Illinois, where class action attorneys typically contract to receive at least one-third or more of any settlement in common fund matters as compensation for the risk of funding a potential multi-year litigation without any assurance of recovery. *See e.g. Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *Fields v. Abra*

9

*Auto Body & Glass LP,* 2017-ch-12271 (approving 37.5% of a BIPA class action settlement fund); *Kusinski v. ADP LLC,* 17-CH-12364 (awarding 40% of a BIPA class action settlement fund); *Zhirovetskiy v. Zayo Group, LLC,* 17-CH-09323 (same).

Class Counsel are nationally recognized for their expertise in handling complex class and collective actions, including BIPA class actions, and are warranted in seeking compensation in the form of 37.5% of the Settlement for their efforts. (Ex. 1, Ficzko Decl. ¶¶ 5-6) Class Counsel and the Named Plaintiff agreed that Class Counsel would request a reasonable percentage of any future recovery. (*Id.* at ¶ 18.) Therefore, the Court is aware of what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, 720, because the Named Plaintiff contracted for Class Counsel to be compensated by the method Class Counsel now seek.

Thus, the decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Class Counsel faced. At the outset of the litigation, Class Counsel took this case on a contingent basis, risking investing time and money with no guaranteed recovery. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Considering the substantial risks, Class Counsel's request for fees of 37.5% of the gross Settlement is reasonable. Given the large number of unresolved questions in BIPA cases, and the possibility that the Class would recover nothing at all, the relief secured by Class Counsel is exceptional and supports the fee request. As the Seventh Circuit astutely noted, Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

10

### 5. Although the Court Need Not Perform a Lodestar Cross-Check, Class Counsel's Lodestar Supports the Fee Request.

Class Counsel's fee request should be approved because the Settlement provides a substantial recovery for Settlement Class Members, does not present any hint of collusion, and Class Counsel's fee request is reasonably based on the market rate. No further analysis is needed. Nevertheless, a lodestar cross-check supports the reasonableness of Class Counsel's fee request.

It isn't necessary for courts in this Circuit to perform lodestar cross-checks in common fund settlements. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) Although courts occasionally view counsel's lodestar as a "cross-check to assist in determining the reasonableness of the percentage fee award," (*Heekin v. Anthem, Inc.*, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012)) the cross-check is of limited utility because "the market controls." *In re Trans Union Corp. Privacy Litig.*, 2009 WL 4799954, at *8 (N.D. Ill. Dec. 9, 2009).

Nonetheless, if the Court were to evaluate Class Counsel's lodestar, it would highlight the reasonableness of the fees required. To date, Class Counsel have incurred over $813,000.00 in attorneys' fees and $6,725.40 in outstanding expenses, excluding settlement administration cost. (Ex. 1, Ficzko Decl. ¶¶ 25, 29.) Class Counsel's rates are based on market rates and, therefore, are reasonable. (*Id.*, ¶¶ 20-21) To date, Class Counsel expended over 1,640 hours litigating this case. (*Id.*, ¶ 25.) Class Counsel will also necessarily spend time implementing the Settlement by overseeing the distribution of the Settlement Fund. Should the Court perform the lodestar cross-check, these hours would justify the significant work Class Counsel have invested and would confirm the reasonableness of the fees requested. The Court should presume these hours were reasonably necessary to vigorously prosecute the case because Class Counsel contracted, and expected, to recover a percentage of the fund (if they recovered at all) and not their lodestar – and therefore had little incentive to expend unnecessary time and effort. *See Wal-Mart Stores, Inc. v.*

*Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (The percentage method "provides a powerful incentive for efficient prosecution and early resolution of litigation."). Put another way, Class Counsel was not seeking to pad a bill they never expected to come due.

### 6. Class Counsel Are Entitled to Reimbursement of Litigation Costs and Settlement Administration Expenses.

As noted herein, the award of litigation costs, as well as fees, is permitted under BIPA. *See* 740 ILCS 14/20. Class Counsel have advanced litigation costs and expenses which were reasonably and necessarily incurred during this litigation. (Ex. 1, Ficzko Decl. ¶¶ 9, 29) Class Counsel seek an award of $6,725.40 in out-of-pocket costs. (*Id.*, ¶ 29)

### 7. The Class Representative Should Be Awarded an Incentive Award for Her Efforts in this Litigation.

Finally, the Class Representative requests an Incentive Award of $7,500.00 for her efforts in this case. Courts may make separate awards to class representatives in recognition of their risks taken, time expended and benefits to the class. *See Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). Named plaintiffs in class action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g.*, *Espenscheid*, 688 F.3d at 876-77; *Cook*, 142 F.3d at 1016. In examining the reasonableness of a requested service payment, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and

effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

The role of the Class Representative in this litigation was crucial. The Class Representative sacrificed her time to prosecute this lawsuit. (Ex. 1, Ficzko Decl. ¶ 34.) She met, conferred, and corresponded with Class Counsel on a regular basis. (*Id.*) She responded to written discovery and participated in the settlement efforts that led to resolution of this case. (*Id.*) In short, the Class Representative provided invaluable information and assistance to Class Counsel which provided for the successful conclusion of this lawsuit. (*Id.*) Therefore, Class Counsel request a separate Incentive Award of $7,500.00 to the Class Representative in addition to any pro rata share of the Settlement Fund to which she is entitled.

### 8. The Court Should Award the Settlement Administration Expenses.

Lastly, Plaintiff seeks an award for Administrative Fees in the amount of $41,000.00 to be paid to Simpluris, Inc. from the Settlement Fund, for its work administering the Settlement, including distributing Notice to the Settlement Class Members, answering Class Member questions, establishing and administering the qualified Settlement Fund, and distributing payments to Class Members. (Ex. 1, Ficzko Decl. ¶ 32; *see generally* Ex. 3, Admin Decl.) A settlement administrator performs a crucial function in class settlements and the Court should award the reasonable payment requested from the Settlement Fund.

### IV. <u>CONCLUSION</u>

For all of the foregoing reasons, Class Counsel respectfully request that the Court grant their Unopposed Petition for Approval of Attorneys' Fees, Costs, and Incentive Award to the Class Representative and enter the Proposed Order attached hereto as <u>Exhibit 4</u>:

        (1)    awarding Class Counsel attorneys' fees in the amount of $3,522,915.00;

        (2)    awarding Class Counsel litigation costs in the amount of $6,725.40;

13

    (3)    awarding settlement administration expenses in an amount not to exceed $41,000.00; and,

    (4)    awarding an Incentive Award of $7,500.00 to the Class Representative, in addition to the share of the Settlement Fund to which she is entitled.

Date: July 25, 2024

Respectfully Submitted,

*/s/ Andrew C. Ficzko*
Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLC**
222 W. Adams Street
Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

**CLASS COUNSEL**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 25, 2024, he electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ Andrew C. Ficzko*